

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2001

# USA v. Vazquez

Precedential or Non-Precedential:

Docket 99-3845

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Vazquez" (2001). *2001 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Volume 1 of 2

Filed October 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3845

UNITED STATES OF AMERICA

v.

ALEX VAZQUEZ,

      Appellant.

On Appeal from the United States District Court
for the Middle District of Pennsylvania

District Judge: Sylvia H. Rambo
(D.C. Crim. No. 98-00086-01)

Originally Argued December 15, 2000
Before: SCIRICA, FUENTES, and GARTH, Circuit Judges.

Argued En Banc May 23, 2001

Before: BECKER, Chief Judge, SLOVITER, MANSMANN,
SCIRICA, NYGAARD, ALITO, ROTH, McKEE, RENDELL,
BARRY, AMBRO, FUENTES, and GARTH, Circuit Judges .

(Opinion Filed: October 9, 2001)

Martin C. Carlson
United States Attorney
Christy H. Fawcett
Assistant United States Attorney
Office of United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, Pennsylvania 17108

Michael R. Dreeban (argued)
Deputy Solicitor General
U.S. Department of Justice
Nina Goodman
Michael A. Rotker
Criminal Division
U.S. Department of Justice
601 D Street N.W., room 6206
Washington, D.C. 20530
Attorneys for Appellee

Peter Goldberger (argued)
Pamela A. Wilk
James H. Feldman, Jr.
50 Rittenhouse Place
Ardmore, Pennsylvania 19003-2276
Attorneys for Appellant

Shelley Stark
Federal Public Defender
Lisa B. Freeland (argued)
Assistant Federal Public Defender
415 Convention Tower
960 Penn Avenue
Pittsburgh, Pennsylvania 15222
Attorneys for Amicus Curiae
 Leroy Campbell

Lisa Kemler
108 N. Alfred Street
Alexandria, Virginia 22315
Attorney for Amicus Curiae
 National Association of Criminal
Defense Lawyers

          Mary Price
          General Counsel
          1612 K Street N.W., suite 1400
          Washington, D.C. 20006
          Attorney for Amicus Curiae
           Families Against Mandatory
          Minimums Foundation

          Clayton A. Sweeney, Jr.
          1528 Walnut Street, suite 815
          Philadelphia, Pennsylvania
           19102-3604
          Attorney for Amici Curiae
           National Association of Criminal
          Defense Lawyers, Pennsylvania
          Association of Criminal Defense
          Lawyers and Families Against
          Mandatory Minimums Foundation

OPINION OF THE COURT

FUENTES, Circuit Judge:

This appeal requires us to apply the Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), to a drug conspiracy sentence. At sentencing, the trial court, adhering to established law and custom, itself decided the issue of drug quantity under a preponderance of the evidence standard. Based largely on this finding, the court sentenced appellant, Alex Vazquez, to a prison term of 292 months (24 years and 4 months), which exceeded, by over 4 years, the statutory maximum authorized by the jury's factual findings. Subsequently, the Supreme Court held in Apprendi that a criminal defendant's constitutional rights are violated when his prescribed statutory maximum penalties are increased by any fact, other than a prior conviction, that a jury does not find beyond a reasonable doubt. Id. at 490. Vazquez now challenges his sentence contending that, because the court did not submit the issue of drug quantity to the jury for determination, he must be resentenced in accordance with the default 20-year

3

statutory maximum sentence that applies to cocaine offenses of unspecified drug quantity.

Vazquez did not contest the drug quantity evidence at any stage of the proceedings. As a result, our review is for plain error. We conclude that Vazquez's sentence violated Apprendi, and therefore, the failure to submit drug quantity to the jury, and the imposition of a prison term in excess of 20 years, was erroneous. Nonetheless, because we remain confident that a rational jury would have found, beyond a reasonable doubt, the drug quantities that the judge found, we conclude that Vazquez is not entitled to plain error relief and we will therefore affirm his sentence.[1]

I.

The relevant facts are largely undisputed. On February 27, 1998, after a lengthy investigation, law enforcement authorities seized a quantity of powder cocaine and crack cocaine from a rooming house in Columbia, Pennsylvania. Vazquez's fingerprint was on one of the bags in which the cocaine had been stored.

The next day, officers executed a search warrant at Vazquez's residence. There, police seized a digital scale from Vazquez's bedroom, a key to the front door of the rooming house, and a stolen firearm. Thereafter, state law enforcement authorities and agents from the Federal Bureau of Investigation ("FBI") interviewed a number of Vazquez's drug customers, including James Freeland, Brian Holmes, and Wayne Rice. All three gave statements implicating Vazquez and Francisco Algarin in a drug dealing operation. Algarin was identified as a "runner" for the organization.

_____

1. The District Court had jurisdiction pursuant to 18 U.S.C. S 3231. This court has jurisdiction under 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a).

The parties originally argued this case before a merits panel of our court on December 15, 2000. However, given the importance of the Apprendi issue, we elected to consider the case en banc prior to the publication of the original three-judge panel opinion. See 3d Cir. I.O.P. 9.4 (2000).

4

On June 9, 1998, a grand jury for the Middle District of Pennsylvania issued an indictment charging Vazquez with conspiracy to possess and distribute "more than 5 kilos of cocaine" in violation of 21 U.S.C. SS 846 and 841, several related counts of obstruction of justice (including one under 18 U.S.C. S 1503), and two counts of witness tampering. The indictment specifically charged a drug conspiracy involving "cocaine." Although it did not reference cocaine base or crack cocaine, it listed the following overt act: "stor[ing] approximately 859 grams of `crack' cocaine (cocaine base) and approximately 992 grams of cocaine powder in Room #2, 647 Union Street, Columbia, PA."

The trial evidence, which included testimony based on a forensic lab analysis, established that police seized 991 grams of powder cocaine and 859 grams of crack cocaine from the Columbia rooming house.2 According to the testimony, Vazquez had given the drugs to his co-conspirator, Algarin, for storage at the rooming house, and Vazquez's fingerprint was found on one of the bags in which the cocaine was stored. Also, a key to the front door of the rooming house was found on Vazquez's person. Vazquez raised no objection to the testimony respecting drug quantity, and he presented no affirmative evidence at any time challenging the Government's evidence of drug quantity. Additionally, neither the Government nor Vazquez requested an instruction requiring the jury to find the quantity of drugs involved in his conspiracy offense, and the court gave no such instruction. The District Court's instructions concerning the drug conspiracy only required the jury to find that Vazquez conspired "to possess and distribute cocaine." Following deliberations, the jury convicted Vazquez of conspiracy to possess and distribute cocaine, as well as obstruction of justice. However, the jury acquitted Vazquez of a conspiracy to obstruct justice charge. In addition, the jury was unable to reach verdicts

_____

2. A discrepancy of 1 gram exists in the record as to the amount of powder cocaine. The trial testimony referred to 991 grams, while the District Court found the amount to be 992 grams. Because the 1 gram difference is of no substantive import in these proceedings, we will refer to the amount as 992 grams.

on the two witness tampering counts; the District Court declared a hung jury as to those counts.

At the sentencing hearing, the District Court adopted the factual findings and sentencing recommendations in the presentence report. The court determined, without objection and under a preponderance of the evidence standard, that, based on the trial evidence and the presentence report, Vazquez had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. The court therefore assigned Vazquez a base offense level of 36 in accordance with U.S.S.G. S 2D1.1's Drug Quantity Table. The District Court then applied two separate 2-level upward adjustments, the first for being an organizer/leader under U.S.S.G. S 3B1.1(c), and the second for attempted obstruction of justice under U.S.S.G. S 3C1.1. An adjusted offense level of 40 and a criminal history category of I resulted in a sentencing range of 292 to 365 months. The District Court ultimately sentenced Vazquez at the bottom of that range, the guideline minimum of 292 months, for the drug conspiracy, and to a concurrent term of 120 months for the obstruction of justice charge. The court also imposed a 5-year supervised release term on the drug conspiracy count and a concurrent 3-year supervised release term on the obstruction of justice charge. With regard to the drug conspiracy, the judgment of conviction stated that Vazquez was sentenced for a conspiracy in violation of 21 U.S.C. S 846, with the object of distributing more than 5 kilograms of cocaine in violation of 21 U.S.C. S 841(b)(1)(A).3

II.

We begin by explaining why Apprendi was violated in Vazquez's case. Thereafter, because Vazquez did not contest the evidence of drug quantity before the District Court, we will analyze the parties' contentions under the plain error standard.

_____

3. Specifically, with regard to the drug conspiracy, the judgment of conviction identifies the "Title & Section" as"21 U.S.C. S 846," and describes the "Nature of Offense" as "Conspiracy to Possess and Distribute More Than Five Kilograms of Cocaine."

6

A.

Vazquez was indicted and tried for conspiracy to possess and distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. SS 846 and 841. To explain the relationship between Apprendi and S 841, we will briefly review the Apprendi decision, and we will then detail how Apprendi was violated in this case.

In Apprendi, the defendant had fired several shots into the home of an African-American family that had recently moved into a New Jersey neighborhood. 530 U.S. at 469. After his arrest, he reportedly stated that he did not know the occupants personally but did not want African-Americans in his neighborhood. Id. at 469. He later, however, denied making such a statement. Id. at 469, 471. He pled guilty in state court to two counts of second-degree possession of a firearm for an unlawful purpose, each of which carried a sentencing range of 5 to 10 years. Id. at 469-70. Subsequently, the prosecutor filed a motion to enhance the defendant's sentence pursuant to New Jersey's hate crime statute, which authorized an increased punishment for first-degree offenses based upon a trial judge's finding, by a preponderance of the evidence, that the defendant had committed the crime with a purpose to intimidate a person or group because of race. Id. at 470, 491-92 (discussing N.J. Stat. Ann. S 2C:44-3(e) (West Supp. 2000)). After a contested evidentiary hearing, the trial court found, by a preponderance of the evidence, that the shooting was racially motivated and imposed a 12-year sentence on one of the second-degree counts. Id. at 471.

The Supreme Court granted certiorari and reversed, holding that the New Jersey sentencing procedures violated the Due Process Clause of the Fourteenth Amendment. In doing so, the Court articulated a new rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added). Further, with the exception for prior convictions, the Court endorsed the following concept: " `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to

7

which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " Id. (quoting Jones v. United States, 526 U.S. 227, 252-53 (1999) (Stevens, J., concurring)).

In Vazquez's case, drug quantity was neither submitted to the jury nor reflected in its verdict. Therefore, S 841(b)(1)(C) defines Vazquez's prescribed statutory maximum sentence as 20 years. We indicated in United States v. Williams, 235 F.3d 858 (3d Cir. 2000), petition for cert. filed, 69 U.S.L.W. 3763 (U.S. 2001), and we hold here, that an Apprendi violation only occurs if the drug quantity is not found by a jury beyond a reasonable doubt and the defendant's sentence under S 841 exceeds 20 years.

In this case, the District Court sentenced Vazquez to more than 24 years' imprisonment, specifically 292 months. The court increased Vazquez's penalty based on its finding, by a preponderance of the evidence, that he had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. This nearly 2-kilogram quantity led to Vazquez's sentencing guideline range of 292 to 365 months, which ultimately resulted in his 292-month sentence. The Apprendi violation occurred when the judge, rather than the jury, determined drug quantity and then sentenced Vazquez to a more than 24-year sentence, a term in excess of his prescribed 20-year statutory maximum under S 841(b)(1)(C). Our sister courts of appeals have similarly applied Apprendi to S 841. E.g. , United States v. Hishaw, 235 F.3d 565, 574-75 (10th Cir. 2000), cert. denied, 121 S. Ct. 2254 (2001); United States v. Doggett, 230 F.3d 160, 164 (5th Cir. 2000), cert. denied, 121 S. Ct. 1152 (2001); United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000); see also United States v. Rebmann, 226 F.3d 521, 524-25 (6th Cir. 2000); United States v. Nordby , 225 F.3d 1053, 1059 (9th Cir. 2000).

B.

We now turn to the consequences of the Apprendi violation. Vazquez's strongest argument is that his jury did not make a finding beyond a reasonable doubt as to drug quantity, and thus, he must be resentenced in accordance

with S 841(b)(1)(C)'s 20-year maximum term. According to Vazquez, the District Court committed reversible error when it imposed a more than 24-year prison term based on its own drug quantity finding, which was conducted under the less demanding preponderance of the evidence standard. As we stated previously, Vazquez neither challenged the evidence of drug quantity nor objected to the court's failure to submit the issue to the jury. Moreover, he never argued that the sentencing court was constrained by the 20-year maximum found in S 841(b). Consequently, the plain error standard governs Vazquez's request for relief. See Fed. R. Crim. P. 52(b); Johnson v. United States, 520 U.S. 461, 465-66 (1997). Under that standard, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 466-67 (internal quotations and citations omitted); accord United States v. Olano, 507 U.S. 725, 732-36 (1993).

1.

The trial court committed error in Vazquez's case. As we explained above, the District Court violated Apprendi when it increased Vazquez's sentence beyond the prescribed statutory maximum, based on its own factual finding concerning drug quantity, instead of submitting the issue to the jury for its determination. Further, Apprendi applies retroactively because Vazquez's direct appeal was pending at the time Apprendi was decided. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("new rule[s] for the conduct of criminal prosecutions [are] to be applied retroactively to all cases . . . pending on direct review . . . , with no exception for cases in which the new rule constitutes a `clear break' with the past"); see also Johnson, 520 U.S. at 467.

2.

As even the Government concedes, the Apprendi violation that occurred in Vazquez's case was plain. This second

factor of the plain error standard is met if the error is "obvious" or "clear under current law." Olano, 507 U.S. at 734. Clearly, had the Government tried Vazquez's case post-Apprendi, it would have been constitutional error for the District Court to impose a sentence exceeding the 20-year maximum in S 841(b)(1)(C) based on the court's finding, by a preponderance of the evidence, as to drug quantity. Thus, the Apprendi violation is plain even though the District Court conducted Vazquez's proceedings correctly under the then applicable law. See Johnson, 520 U.S. at 468 ("in a case such as this -- where the law at the time of trial was settled and clearly contrary to the law at the time of appeal," this second factor is satisfied if the error is obvious "by the time of appellate consideration").

3.

Vazquez must next satisfy the third plain error factor, which asks whether his substantial rights were affected. Before resolving this issue, we will address several preliminary matters raised in the parties' arguments because our resolution of those matters will significantly affect how we conduct the substantial rights inquiry. First, we will consider whether an Apprendi violation should be deemed a sentencing error (as opposed to a trial error), or a combination of a trial and sentencing error. We conclude that the latter approach is more consonant with the realities of Apprendi violations, as well as Supreme Court precedent. Second, we will consider whether an Apprendi violation is per se prejudicial because it constitutes a structural defect in the proceedings. If so, our plain error analysis would come to an end, and we would be compelled to grant Vazquez relief. We conclude that Apprendi violations do not constitute structural defects. Third, we will proceed to consider whether the Apprendi violation that occurred in Vazquez's case affected his substantial rights. We conclude that Vazquez's substantial rights were not affected. Fourth, we also hold that, even if Vazquez's substantial rights were affected, we decline to exercise our discretion to notice the Apprendi violation under the final plain error factor because the drug quantity evidence was overwhelming. Therefore, Vazquez is not entitled to plain

10

error relief even though an Apprendi violation occurred during his criminal proceedings.

Parenthetically, in addressing the substantial rights inquiry, we will rely on precedent applying Fed. R. Crim. P. 52(a)'s harmless error standard, as well as Fed. R. Crim. P. 52(b)'s plain error standard, each of which provides relief only if substantial rights are affected.[4] The substantial rights inquiry under each provision is essentially identical, with the exception of the burden of proof. See Olano, 507 U.S. at 734-35 (clarifying that Government has burden of proof under harmless error standard, while defendant has burden under plain error standard); Nordby, 225 F.3d at 1060. Thus, we may properly rely upon both harmless and plain error precedent in deciding whether Vazquez has shown that the Apprendi violation affected his substantial rights. In this case, Vazquez has not carried his burden of proof.

(a)

The parties dispute the nature of Apprendi violations. Vazquez claims that the Apprendi violation that adversely affects the defendant's rights in most drug cases, including this one, is the sentencing decision, not any trial error. According to Vazquez, a properly conceived substantial rights inquiry, in the context of an Apprendi violation, requires an appellate court to ask whether it can say, beyond a reasonable doubt, that the sentence would have been the same absent the sentencing error, which occurred when a sentence was imposed in excess of the prescribed statutory maximum. See Nordby, 225 F.3d at 1060. Under Vazquez's approach, every Apprendi violation with respect to drug quantity in a cocaine case will automatically result in a resentencing in accordance with the 20-year maximum

_____

4. Rule 52 provides in full:

    (a) Harmless Error. Any error, defect, irregularity or variance which
    does not affect substantial rights shall be disregarded.

    (b) Plain Error. Plain errors or defects affecting substantial rights
    may be noticed although they were not brought to the attention
    of the court.

sentence under S 841(b)(1)(C), regardless of how conclusive the evidence is with regard to drug quantity.

The Government advocates a different approach, urging us to recognize that an Apprendi violation involves not just a sentencing error but also a trial error. This approach emphasizes that, due to the Apprendi violation, drug quantity becomes an element of the offense which a jury has not determined beyond a reasonable doubt. See Apprendi, 530 U.S. at 494 n.19; Nordby, 225 F.3d at 1060. When we conduct plain error review under this paradigm, the substantial rights inquiry turns on whether we can say beyond a reasonable doubt that the sentence would have been the same absent the trial error, which occurred when drug quantity was not submitted for a jury determination. See Neder v. United States, 527 U.S. 1, 18 (1999) (in case of trial error resulting from failure to submit element to jury, substantial rights inquiry asks whether it is"clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error"); Sochor v. Florida, 504 U.S. 527, 540 (1992) (harmless error asks whether error " `did not contribute to the[sentence] obtained' ") (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Thus, under the Government's approach, the remedy for an Apprendi violation will depend upon the entire record, and no remedy may be available if the court determines that the evidence was sufficiently conclusive to support the sentence actually imposed. However, substantial rights will be affected if, for example,"the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." Neder, 527 U.S. at 19.

We are persuaded that the Government's approach must prevail for two reasons. First, the Government's position better reflects the realities concerning the nature of Apprendi violations. In Apprendi, the Supreme Court recognized a new constitutional right grounded in the Due Process Clause and the Sixth Amendment's notice and jury trial guarantees. See 530 U.S. at 476. Consistent with the Supreme Court's pronouncement of this new constitutional right, in an Apprendi violation, the sentencing error (imposing a sentence beyond the prescribed statutory

12

maximum) is inextricably intertwined with a trial error (failing to submit an element of the offense to the jury). On the one hand, the trial error exists only because of the sentencing error. On the other hand, the sentencing error cannot occur without the trial error. Thus, an appropriate remedy must recognize that each Apprendi violation is both a trial and a sentencing error. But see United States v. Promise, ___ F.3d ___, No. 99-4737, 2001 WL 732389, at *5 (4th Cir. June 29, 2001) (en banc) (concluding that Apprendi violation results from error at sentencing and not in defendant's conviction). As a result, we properly consider the trial record on plain error review. Indeed, as the Supreme Court has stated: "Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." United States v. Young, 470 U.S. 1, 16 (1985). Our holding is consistent with decisions from the First,[5] Fifth,[6] Seventh,[7] Eighth,[8] Tenth,[9] Eleventh,[10] and District of

---

5. See United States v. Patrick, 248 F.3d 11, 28 (1st Cir. 2001); United States v. Terry, 240 F.3d 65, 74-75 (1st Cir.), cert. denied, 121 S. Ct. 1965 (2001).

6. See United States v. Green, 246 F.3d 433, 436-37 (5th Cir. 2001); United States v. Slaughter, 238 F.3d 580, 583-84 (5th Cir.) (per curiam), cert. denied, 121 S. Ct. 2015 (2001).

7. See United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001); United States v. Jackson, 236 F.3d 886, 888 (7th Cir. 2001) (per curiam); cf. United States v. Westmoreland, 240 F.3d 618, 634-35 (7th Cir. 2001) (considering trial evidence in holding that substantial rights affected).

8. See United States v. Poulack, 236 F.3d 932, 938 (8th Cir. 2001), petition for cert. filed, No. 00-10546 (U.S. June 8, 2001); United States v. Anderson, 236 F.3d 427, 429-30 (8th Cir. 2001) (per curiam); cf. United States v. Butler, 238 F.3d 1001, 1005-06 (8th Cir. 2001) (considering trial evidence in holding that substantial rights affected).

9. See Hishaw, 235 F.3d at 575-77.

10. See United States v. Gallego, 247 F.3d 1191, 1196-97 (11th Cir. 2001); United States v. Wims, 245 F.3d 1269, 1272-74 & nn.9-11 (11th Cir. 2001) (per curiam); United States v. Candelario, 240 F.3d 1300, 1311-12 (11th Cir.), cert. denied, 121 S. Ct. 2535 (2001); United States v. Pease, 240 F.3d 938, 944 (11th Cir. 2001) (per curiam); United States v. Nealy, 232 F.3d 825, 829-30 (11th Cir. 2000); United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir. 2000), cert. denied, No. 00-9051, 2001 WL 291894 (U.S. June 29, 2001).

Columbia[11] Circuits, which, in reviewing Apprendi violations, have considered the trial evidence in determining whether substantial rights were affected.

Second, we find the Government's approach is more consonant with Supreme Court precedent. In both Neder and Johnson, the Supreme Court confronted a failure to submit an element of the offense to the jury. The omitted element in each case was the materiality of a falsehood; a tax fraud in Neder and a perjury in Johnson. See 527 U.S. at 6–7; 520 U.S. at 463–65. The Court in Neder and Johnson agreed that the error was of a constitutional dimension. See 527 U.S. at 12; 520 U.S. at 465 (citing United States v. Gaudin, 515 U.S. 506 (1995)). Further, each decision addressed whether substantial rights were affected; the Neder Court applied harmless error review, while the Johnson Court applied plain error review. See 527 U.S. at 7–10; 520 U.S. at 466–67. The trial error presented here is comparable to the errors in both Neder and Johnson because in those cases the trial error resulted in a constitutional defect, necessitating an inquiry as to whether the defendant's substantial rights were affected. Thus, Neder and Johnson apply because we are presented with the same substantive issue, namely, the consequence of failing to submit to the jury an element of an offense.

(b)

Next, Vazquez argues that the Apprendi violation constitutes a structural defect in the proceedings. This issue is properly considered at this juncture during the course of our substantial rights inquiry. See Johnson, 520 U.S. at 466 (no structural defect exception to Fed. R. Crim. P. 52(b)); id. at 468 (structural defect inquiry is relevant to substantial rights inquiry). Structural defects are "defects in the constitution of the trial mechanism" that affect "the framework within which the trial proceeds," with such a resulting impairment in the trial's function of determining guilt or innocence that " `no criminal punishment may be

_____

11. See United States v. Fields, 251 F.3d 1041, 1045 (D.C. Cir. 2001) (considering trial evidence in holding that substantial rights affected).

14

regarded as fundamentally fair.' "12  Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991) (opinion of Rehnquist, C.J.) (quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)). Structural defects lead to automatic reversals because they are per se prejudicial. See id. at 307-10 (opinion of Rehnquist, C.J.).

We reject Vazquez's contention that Apprendi violations constitute structural defects. As we have already explained, Apprendi violations result in both trial and sentencing errors, albeit ones that rise to a constitutional dimension. However, the Supreme Court has instructed that "most constitutional errors can be harmless," and that guidance applies here. Fulminante, 499 U.S. at 306 (opinion of Rehnquist, C.J.); see also West v. Vaughn, 204 F.3d 53, 60 n.7 (3d Cir. 2000), abrogated sub nom. on other grounds by Tyler v. Cain, 121 S. Ct. 2478 (2001). Trial errors resulting from a failure to submit an element of an offense to the jury are not structural defects, but instead, are subject to harmless or plain error analysis. That is, "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder, 527 U.S. at 9. Similarly, sentencing errors can also be harmless. See, e.g., Jones v. United States, 527 U.S. 373, 402-05 (1999) (applying harmless error review to federal death sentence); United States v. Stevens, 223 F.3d 239, 242-46 (3d Cir. 2000) (applying plain error review to sentencing judge's failure to assure that defendant had read and discussed presentence investigation report with his attorney), cert. denied, 121 S. Ct. 1157 (2001). Thus, we hold that an Apprendi violation is not a structural defect. As far as we are aware, our holding is in accord with every court of appeals decision that has addressed this issue.

_____

12. Examples of structural defects include: (1) the complete denial of counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963); (2) a biased trial judge, see Tumey v. Ohio, 273 U.S. 510 (1927); (3) racial discrimination in the selection of a grand jury, see Vasquez v. Hillery, 474 U.S. 254 (1986); (4) the denial of self-representation at trial, see McKaskle v. Wiggins, 465 U.S. 168 (1984); (5) the denial of a public trial, see Waller v. Georgia, 467 U.S. 39 (1984); and (6) defective reasonable doubt instructions, see Sullivan v. Louisiana, 508 U.S. 275 (1993).

See, e.g., United States v. Smith, 240 F.3d 927, 930 & n.5 (11th Cir. 2001) (per curiam); United States v. Westmoreland, 240 F.3d 618, 634 (7th Cir. 2001); Anderson, 236 F.3d at 429.

(c)

Having concluded that the Neder and Johnson frameworks apply to this case, and that Apprendi violations do not constitute structural defects, we address whether Vazquez's substantial rights were affected. During the course of this appeal, Vazquez has raised substantial rights arguments with regard to both his sentence and conviction. We will address each in turn.

We assess Vazquez's challenge to his sentence by determining whether it would have been the same absent the failure to submit drug quantity for a jury determination. We are confident that Vazquez's sentence would have been the same had the jury made the drug quantity finding. In his case, the evidence established beyond a reasonable doubt that Vazquez had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. Indeed, the sentencing judge, explaining that Vazquez's sentence was driven by the quantity of drugs involved, stated that "[t]he lab report which was admitted into evidence in this case substantiates the amount, and there has never been any question about the amount."

In these circumstances, we can say without a doubt that Vazquez conspired to possess and/or distribute the 992 grams of powder cocaine and 859 grams of crack cocaine the authorities found at the Columbia rooming house. Solely on the basis of the uncontested 992 grams of powder cocaine, Vazquez would have faced a statutory sentencing range of between 5 to 40 years. See 21 U.S.C. S 841(b)(1)(B)(ii)(II). Thus, the slightly more than 24-year sentence imposed here fell within the statutory limits applicable to a cocaine-only conspiracy given the drug amount established at trial. Cf. Edwards v. United States, 523 U.S. 511, 515 (1998) (rejecting statutory and constitutional challenges to sentences because imposed incarceration terms "were within the statutory limits

16

applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner").

Further, Vazquez's sentence would not have changed because the court would have considered the 859 grams of crack cocaine for sentencing guideline purposes under the Guidelines' relevant conduct provisions. See U.S.S.G. S 1B1.3 (1998); Edwards, 523 U.S. at 514; Williams, 235 F.3d at 864. This fact would have led to the same guideline sentencing range of 292 to 365 months that the court actually applied to Vazquez. No Apprendi problem would then exist because the resulting 292-month sentence would be less than the 40-year statutory maximum sentence under S 841(b)(1)(B)(ii)(II) to which Vazquez was exposed solely for his conspiracy offense involving 992 grams of powder cocaine.

Vazquez's failure to dispute the amount of cocaine at trial or sentencing supports our conclusion that he cannot show an effect on his substantial rights. Indeed, he presented no challenge to, or affirmative evidence against, the Government's evidence of drug quantity. As a result, the sentencing judge stated that "there has never been any question about the [drug] amount." In a comparable situation, the Supreme Court observed:

> [W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. We think it beyond cavil here that the error "did not contribute to the verdict obtained."

Neder, 527 U.S. at 17 (quoting Chapman , 386 U.S. at 24).

In addition to attacking his sentence, Vazquez relies upon Apprendi to challenge his conviction. Vazquez contends that his substantial rights were affected because, had the trial judge properly submitted drug quantity to the jury, he necessarily would have been acquitted because the evidence the Government presented at trial -- 992 grams of powder cocaine and 859 grams of crack cocaine -- did not support a more than 5-kilogram cocaine conspiracy, as

17

alleged in the indictment. Vazquez also contends that his sentence cannot be upheld based upon the 992 grams of powder cocaine because doing so would create a material variance from the more than 5-kilogram drug quantity alleged in the indictment. See United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996) (explaining that "[a] variance occurs when `the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment' ") (quoting United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985)); United States v. Crocker, 568 F.2d 1049, 1059 (3d Cir. 1977) (discussing variance concept).

Vazquez's arguments are unavailing. The discrepancy between the amount of cocaine stated in the indictment -- more than 5 kilograms -- and the amount of powder cocaine upon which we uphold Vazquez's sentence-- 992 grams -- is, for purposes of the substantial rights inquiry, immaterial. It is immaterial because the indictment charged the 5-kilogram amount, and it is well settled that courts "may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." Rutledge v. United States, 517 U.S. 292, 306 (1996); accord Fed. R. Crim. P. 31(c); see also Schmuck v. United States, 489 U.S. 705, 716 (1989) (adopting "elements approach" to resolving greater/lesser offense issues); cf. United States v. Frorup, 963 F.2d 41, 42 (3d Cir. 1992) ("This court will uphold a jury verdict convicting a defendant of a lesser offense than the one charged if `the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit of the greater.' ") (quoting Keeble v. United States, 412 U.S. 205, 208 (1973)). Additionally, had the court submitted drug quantity to the jury to avoid an Apprendi issue, and had Vazquez argued to the jury that the evidence did not support a finding that the conspiracy's object concerned more than 5 kilograms of powder cocaine, the Government would have been entitled to a lesser included offense instruction. See Frorup, 963 F.2d at 42 ("A jury instruction on [a] lesser included offense is allowable as long as there is some evidence to support the conviction.").

18

4.

Even if we were to assume that the Apprendi violation affected Vazquez's substantial rights, he cannot establish the final plain error factor, namely, that the violation seriously affected the fairness, integrity, or public reputation of judicial proceedings. In Johnson , the Supreme Court held that, when the evidence of an element wrongly taken from a jury "overwhelming[ly]" supports the trial court's finding with regard to that element, "there is no basis for concluding that the error `seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,' " and therefore, plain error relief is unavailable. See 520 U.S. at 470.

The evidence at trial showed that Vazquez was the leader of a drug trafficking operation that distributed powder and crack cocaine in Lancaster County, Pennsylvania. Here, the Government presented overwhelming evidence that Vazquez conspired with others to possess and distribute a quantity of drugs sufficient to justify his sentence. As we previously noted, law enforcement officers seized about 992 grams of powder cocaine and 859 grams of crack cocaine from a rooming house. Vazquez had given the drugs to a co-conspirator, Francisco Algarin, for storage. The key to the rooming house's front door was found on Vazquez's person. In addition, investigators found Vazquez's fingerprint on one of the bags in which the cocaine was stored. After the seizure, police interviewed three of Vazquez's drug customers. All three described Vazquez as the leader of a drug dealing operation. The trial testimony directly tied Vazquez to a drug conspiracy with the co-conspirator, Algarin. On the basis of this evidence, including the undisputed evidence of drug quantity, a rational jury would certainly have found that Vazquez had conspired to possess or distribute no less than 992 grams of powder cocaine, almost twice the amount necessary to support his slightly more than 24-year sentence pursuant to S 841(b)(1)(B)'s 5-to-40-year sentencing range.

Under these circumstances, the evidence concerning drug quantity was "overwhelming," and, as we explained in the preceding section, because Vazquez's sentence would not have changed absent the trial error, there is no reasonable

19

basis upon which to conclude that the fairness, integrity, or public reputation of the judicial proceedings were seriously affected. Our holding is in accord with decisions from the First,[13] Fifth,[14] Seventh,[15] Tenth,[16] and Eleventh[17] Circuits, in which panels considered the evidence adduced at trial and, under the fourth plain error factor, denied relief for Apprendi violations where the evidence was conclusive. Our holding is also in accord with a recent en banc decision of the Fourth Circuit.[18] We therefore conclude that, in light of the undisputed evidence of drug quantity attributable to Vazquez and our determination that his sentence did not exceed the statutory maximum for the cocaine amount introduced at trial, the fairness, integrity, or public reputation of judicial proceedings were not seriously affected even though an Apprendi violation occurred in his case.[19]

_____

13. See Terry, 240 F.3d at 74–75.

14. See United States v. Miranda, 248 F.3d 434, 445–46 (5th Cir. 2001).

15. See United States v. Robinson, 250 F.3d 527, 530–31 (7th Cir. 2001); United States v. Patterson, 241 F.3d 912, 913–15 (7th Cir.) (per curiam), petition for cert. filed, No. 00–10365 (U.S. May 30, 2001); United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001); United States v. Nance, 236 F.3d 820, 825–26 (7th Cir. 2000), petition for cert. filed, No. 00–9633 (U.S. April 24, 2001).

16. See United States v. Wilson, 244 F.3d 1208, 1220 n.7 (10th Cir. 2001), petition for cert. filed, No. 00–10834 (U.S. June 25, 2001), and cert. denied, No. 00–10289, 2001 WL 606873 (U.S. June 29, 2001); United States v. Keeling, 235 F.3d 533, 539–40 (10th Cir. 2000), cert. denied, No. 00–10161, 2001 WL 578795 (U.S. June 25, 2001).

17. See Swatzie, 228 F.3d at 1284.

18. See Promise, 2001 WL 732389, at *8–10 & n.9.

19. The Government presents the alternative argument that Vazquez should not prevail under the plain error standard because the District Court could have justified its 292–month sentence by imposing consecutive terms. According to the Government, even if Vazquez had been sentenced to S 841(b)(1)(C)'s 20-year maximum term of imprisonment on the drug conspiracy conviction, the District Court would have been required to impose a consecutive rather than concurrent sentence on the obstruction of justice conviction. See 18 U.S.C. S 3584(a); U.S.S.G. S 5G1.2(d) (1998). Thus, the Government submits, because Vazquez would have been subject to the same 292–

III.

Vazquez also challenges the supervised release term that the District Court imposed. He contends that the court incorrectly applied the 5-year minimum term of supervised release under S 841(b)(1)(A), when the minimum term was actually 3 years under S 841(b)(1)(C). We note, however, that Vazquez did not raise this argument before the District Court and he did not brief and argue this issue before the panel that initially considered his appeal. Under these circumstances, we conclude that Vazquez has waived his right to pursue this issue here. See Atwater v. City of Lago Vista, 195 F.3d 242, 245 n.3 (5th Cir. 1999) (en banc), aff 'd 121 S. Ct. 1536 (2001); Travitz v. Northeast Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."). But even if Vazquez had not waived the issue, there was no plain error because the 5-year supervised release term was clearly within the range that the court was authorized to impose under any of S 841(b)'s penalty provisions.

IV.

We have reviewed the additional points on appeal, which

_____

month term of imprisonment through the imposition of consecutive sentences on the conspiracy and obstruction of justice convictions, the Apprendi violation did not "affect[ ] the outcome of the district court proceedings." Olano, 507 U.S. at 734; see, e.g., Angle, 2001 WL 732124, at *3-4 (holding that substantial rights not violated because S 5G1.2(d) would have obligated court to achieve same sentence by imposing consecutive terms); Page, 232 F.3d at 544-45 (denying plain error relief to defendants convicted on multiple counts becauseS 5G1.2(d) required imposition of consecutive sentences to extent necessary to produce combined sentence within guideline sentencing range).

We decline to address this contention because we have determined on other grounds that Vazquez has failed to establish that he is entitled to plain error relief.

21

we identify in the margin and none of which require
extended discussion. We find them all to be without merit.[20]

V.

Accordingly, for the reasons that we have set forth above,
we will affirm Vazquez's conviction and sentence.

_____

20. Vazquez asserts that (1) the District Court's pretrial disqualification
of the attorneys he initially obtained, due to their alleged involvement in
the charged obstruction of justice, violated his Sixth Amendment right to
counsel of his choice; (2) his assigned pretrial counsel provided
ineffective representation in failing to file a motion to suppress the key
to the rooming house, and the District Court abused its discretion in
denying as untimely a motion raising that issue that was filed shortly
before trial by counsel that Vazquez had recently retained; (3) the District
Court committed reversible error in denying his motion for a mistrial,
and his subsequent motion for a new trial, which were based on alleged
prejudice he suffered from the jury possibly having learned about his
prior arrest for possession of a stolen firearm; and (4) the evidence is
insufficient to support his conviction for obstruction of justice under 18
U.S.C. S 1503.

22

BECKER, Chief Judge, concurring, with whom Judge Ambro joins.

Justice Frankfurter may not have been the first to observe that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes too late," Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting), but he was surely right in so declaring. Had he the occasion, he might also have observed that sometimes belated wisdom does not arrive until a doctrinal shift removes the obstacles to its revelation, thereby exposing the unstable foundation of that which had been uncritically accepted before. I believe this to be such a case.

The doctrinal shift at work here emanates from Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. This holding in turn exposed the instability of our prior holding that under 21 U.S.C. S 841 drug type and quantity are sentencing factors, requiring only proof by a preponderance of the evidence to a judge, instead of elements of the offense, which would require proof beyond a reasonable doubt to a jury. See, e.g., United States v. Gibbs, 813 F.2d 596, 600 (3d Cir. 1987).

Today the Court partially retreats from our prior position in holding that, at least when drug quantity increases the statutory maximum penalty, it must, per Apprendi , be submitted to the jury and proved beyond a reasonable doubt. By not re-examining Gibbs and its progeny, however, the Court lets stand our interpretation of drug type and quantity as sentencing factors in all other instances. Indeed, by deciding this case on constitutional rather than statutory grounds, see opinion of the Court, ante, at 3, the Court implicitly signals that it is satisfied with our prior statutory construction of S 841, and will continue to apply it in cases where no constitutional -- i.e., Apprendi -- difficulty arises. Cf. Ashwander v. TVA, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (articulating principle that cases should be decided on statutory grounds before reaching constitutional questions).

23

It has become clear to me, however, upon reconsidering S 841 in light of Apprendi, that our prior statutory construction ought to be abandoned altogether. I submit that drug type and quantity are always elements of an offense under S 841, and therefore must always be submitted to the jury for proof beyond a reasonable doubt. See United States v. Gaudin, 515 U.S. 506, 510 (1995) ("[C]riminal convictions [must] rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."). Concomitantly, I believe that drug type and quantity should not be treated as element-like factors only when they increase the prescribed statutory maximum penalty.

In reaching this conclusion, I am guided primarily by the intent of Congress in drafting S 841. In my view, Congress's intent to make drug type and quantity elements of aS 841 offense is evident from the statute's legislative history. It is also evident from the structure of S 841, which, when interpreted according to the canons of construction used by the Supreme Court to distinguish between offense elements and sentencing factors, indicates that Congress intended for drug type and quantity to be elements of an offense. The doctrine of constitutional doubt, which requires that "constitutionally doubtful constructions be avoided where `fairly possible,' " Miller v. French , 530 U.S. 327, 336 (2000) (quoting Communication Workers v. Beck, 487 U.S. 735, 762 (1988)), buttresses the statutory interpretation I offer. Finally, on a practical level, I note that requiring drug type and quantity to be proved to the jury beyond a reasonable doubt would not cause problems in the prosecution and trial processes; indeed, in the wake of Apprendi , federal courts throughout the nation are easily accommodating this requirement. Nor, as I will explain below, would it require overturning large numbers of convictions.

I. Congress's Intent

A. Legislative History

In support of our prior conclusion that drug type was not an element of a S 841 offense, this court has noted that "[w]hile Congress could have enacted separate statutes

24

criminalizing the distribution of particular controlled substances, it did not do so." United States v. Lewis, 113 F.3d 487, 491 (3d Cir. 1997). Similarly, at least one federal appellate judge has concluded that drug type and quantity are not elements because "[i]t is simply not credible to hold that Congress knowingly and intentionally fashioned some 350 offenses in section 841." United States v. Promise, 255 F.3d 150, 175 (4th Cir. 2001) (Luttig, J., concurring in the judgment). The legislative history of S 841, however, points to the opposite conclusion.

Congress enacted the original version of S 841 as part of the Controlled Substances Act ("CSA") of 1970, Pub. L. No. 91-513, S 401, 84 Stat. 1242, 1260-62. In doing so, Congress's intent was to unify in a single statute what was at that time a "plethora of legislation" creating drug offenses in diverse public health and revenue acts. H. R. Rep. No. 91-1444, in 1970 U.S.C.C.A.N. 4566, 4571; see also 116 Cong. Rec. 33,299-300 (1970) (statement of Rep. Springer) (describing the CSA as "a comprehensive approach" to the "big[ ] problem" of "many drug laws which have come about under different circumstances and with entirely separate and diverse histories"); id. at 33,304 (statement of Rep. Rogers) (explaining how the CSA"would consolidate all of the Federal drug laws into one act . . . to enable more efficient administration of the laws"). Recognizing that enacting separate statutes for each type of drug would have been a needless legislative burden, Congress opted for the more efficient double-axis prosecution scheme, under which each act in violation of what is now S 841(a) (manufacture, distribute, etc.) could be prosecuted with respect to the different drug types. See, e.g., United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir. 1986) (holding that, at least for the purposes of double jeopardy, "Congress intended the possession of each scheduled substance to be a separate offense").

Congress first included drug quantity as an operative fact in determining penalties for marijuana manufacture and distribution in its 1980 amendments to the CSA. See Infant Formula Act of 1980, Pub. L. No. 96-359, S 8(c)(2), 94 Stat. 1190, 1194. Both the House and Senate Reports reflect that Congress intended quantity to function as an element

25

with respect to marijuana offenses; they state,"Individuals convicted of trafficking in over 1,000 pounds would be subject to a maximum 15 year prison sentence and/or a maximum $125,000 fine." H. R. Rep. No. 96-936, at 13 (1980); S. Rep. No. 96-916, at 14 (1980) (emphasis added). As evidenced by the language used in 21 U.S.C. S 851, which was passed as part of the original CSA in 1970, Pub. L. No. 91-513, S 411, 84 Stat. 1269, Congress can be presumed to have been aware of the traditional legal distinction between conviction and sentencing at the time it adopted these quantity thresholds. See 21 U.S.C. S 851(b) (noting that the proceedings to establish prior convictions shall be undertaken by the court "after conviction but before pronouncement of sentence").

In 1984 Congress again amended the CSA to account for drug quantity for illegal substances other than marijuana. See S. Rep. No. 98-225, at 255 (1983) (noting that, with the exception of marijuana, the prior CSA did not specifically account for drug quantity). Thus, according to the Senate Report, Congress created "a new subparagraph (A) under section 841(b)(1) that would provide, for offenses involving large amounts of particularly dangerous drugs, higher penalties than those now provided under section 841." Id. at 258 (emphasis added). The use of the plural "offenses" indicates Congress's intention to create within the single statute a multitude of separate crimes depending on drug type and quantity.

The last relevant major changes to the CSA occurred in 1986 when Congress, using the internal structure of subparagraph (b)(1)(A) of the 1984 amendments, created new subparagraphs (b)(1)(A) and (b)(1)(B) and included mandatory minimum sentences for offenses under those subparagraphs. See Narcotics Penalties and Enforcement Act of 1986, Pub. L. No. 99-570, S 1002, 100 Stat. 3207-2. The legislative record indicates that during its discussion of the proposed amendments, Congress understood that prosecutors would be required to introduce evidence of drug quantity during trial in order to obtain a conviction. See H. R. Rep. No. 99-845, at 12 (1986) (explaining that Congress had been informed by U.S. Attorneys that they would be able to meet the evidentiary burden for proving quantity to the jury).

Furthermore, the record reflects that Congress did not consider subparagraph (a) to lay out all of the elements of a S 841 offense; rather, Congress deemed drug type and quantity essential elements of a crime as specified in subparagraphs (b)(1)(A) & (B). The House Report, for instance, specifically notes that "[a] person convicted under those subparagraphs [(b)(1)(A) & (B)] shall not be eligible for parole until the individual has served the minimum sentences required by such subparagraphs." Id. at 19 (emphasis added). Again, as noted above, Congress can be presumed to have been aware of the traditional legal distinction between conviction and sentencing. If Congress had intended for the drug types and quantities listed in S 841(b)(1)(A) & (B) to be sentencing factors, the accompanying legislative record would have referred to a person sentenced -- rather than convicted-- under those subparagraphs.

Immediately following the 1986 amendments, the Justice Department itself, which had been consulted by Congress throughout the amendment process, see H. R. Rep. No. 99-845, at 12 (1986), seemed to conclude that drug type and quantity were elements of separate offenses defined in S 841(b). See Handbook on the Anti-Drug Abuse Act of 1986, at 20-21 (Dep't of Justice Mar. 1987) ("1986 Handbook"). Notably, the 1986 Handbook repeatedly referred to "convictions" under the subparagraphs of S 841(b)(1), which lay out the penalties for the different drug types and quantities. Id. at 3-4, 6-7. Most importantly, the Department "recommend[ed] that where the enhanced and mandatory minimum penalty provisions of 21 U.S.C. SS 841(b)(1) and 960(b), as amended, are based on the kind and quantity of drug involved in particular offenses . . . both the kind and the quantity of the drug be specified in the indictment and proven at trial." Id. at 20 (third emphasis added). I acknowledge that the Department only "recommend[ed]" such an approach, and that it later retreated from this position. See, e.g., United States v. Jenkins, 866 F.2d 331 (10th Cir. 1989). But the fact that it expressed this view in its initial "bible" on the critical 1986 drug law, obviously written after high-level deliberations and at a time when vision was not clouded by subsequent events and perceptions, seems to me very persuasive.

27

In addition to what Congress did, what Congress did not do in adding drug type and quantity in the 1980, 1984, and 1986 amendments is also informative. Specifically, Congress never expressly denoted drug type and quantity as sentencing factors to be determined by the judge and not the jury. See United States v. Brough, 243 F.3d 1078, 1079 (7th Cir. 2001) ("[T]he statute [S 841] does not say who makes the findings or which party bears what burden of persuasion."). In contrast, in the aforementionedS 851, which covers proceedings to establish prior convictions for sentence-enhancement purposes, the statute expressly provides that "the court shall after conviction but before pronouncement of sentence" make its determination regarding prior conviction. 21 U.S.C. S 851(b) (emphasis added). My point is further advanced by reference to the now-repealed Dangerous Special Drug Offender Sentencing provision of the original CSA, which created sentencing factors. See Pub. L. No. 91-513, S 409, 84 Stat. 1242, 1266-69 (1970) (repealed 1984). Under that provision, prior felon status was to be assessed by a judge after conviction using a preponderance-of-the-evidence standard. See id. at 1267.

In sum, Congress's failure to include drug type and quantity within its express sentence-enhancement provisions indicates its intent to treat these factors as elements of a crime. See United States v. McQuilkin, 78 F.3d 105, 108 (3d Cir. 1996) ("It is a canon of statutory construction that the inclusion of certain provisions implies the exclusion of others.") ("inclusio unius est exclusio alterius").

B. Nomenclature and Structure of the Statute

In construing drug type and quantity as sentencing factors rather than elements, this court, as well as the other courts of appeals, have relied on the presence of the labels "Unlawful Acts" and "Penalties" preceding subsections (a) and (b) of the statute. See, e.g., United States v. Lewis, 113 F.3d 487, 490-91 (3d Cir. 1997). This approach is deeply flawed. Although one of our sister courts has noted that this approach "took Congress at its caption," Brough, 243 F.3d at 1079, a close examination reveals that the caption was never really Congress's at all. The original version of the CSA passed by Congress and signed by the

28

President did not affix the label "Unlawful Acts" to S 841(a) or "Penalties" to S 841(b). See CSA, Pub. L. No. 91-513, 1970 U.S.C.C.A.N. (84 Stat. 1260-62) 1466-68. Nor were these captions added in any of the subsequent amendments to the CSA. Rather, these section headings can be traced to the Office of the Federal Register, National Archives and Records Services, which added a reference to "penalties" as a margin note to the predecessor of S 841(b) in the Statutes at Large simply for user convenience. 84 Stat. 1261 (1970). Unfortunately, when the CSA was reproduced in the United States Code, the margin notes were converted into subsection headings by the codification committee, but have never been officially adopted by the Congress, and, therefore, do not have the force of law. See U.S.C. at vii (1994 & Supp. V 1999) (noting that Title 21 has never been officially codified).

Even if the subsection titles had been officially adopted by Congress, we would be wrong to ascribe to subsection (b)'s "Penalties" label the talismanic power to indicate that drug type and quantity are sentencing factors rather than elements of separate crimes. See Castillo v. United States, 530 U.S. 120, 125 (2000) (noting that the mere fact that a statutory section is entitled "Penalties" does not indicate whether that section creates sentencing factors or entirely new crimes for "[t]he title alone does not tell us which are which"). Although S 841(a) is entitled "Unlawful Acts," this subsection alone does not define a complete offense because it includes no punishment. A jury verdict finding only that the defendant had committed the acts described in subsection (a), without more, would not render the defendant guilty of a crime requiring any ascertainable punishment. Compare Almendarez-Torres v. United States, 523 U.S. 224 (1998) (construing 8 U.S.C. S 1326(b)(2) as a sentencing factor where an earlier portion of the statute -- S 1326(a) -- already provided for specific penalties), with Jones v. United States, 526 U.S. 227 (1999) (construing the provisions of 18 U.S.C. S 2119(2)-(3) as elements where the prefatory statutory text did not provide for penalties but only described prohibited conduct).

Furthermore, the wide variation in penalties for the manufacture and distribution of different combinations of

29

drug type and quantity counsels in favor of construing these factors as elements. In two recent cases, Jones and Castillo, the Supreme Court observed that the degree to which the commission of a proscribed act increases the maximum penalty reflects Congress's intent to make the particular act an element or a sentencing factor. In Castillo, the Government argued that under 18 U.S.C. S 924(c), which prohibits the use or carrying of a firearm in relation to a crime of violence, the particular type of firearm used by the defendant was a sentencing factor for the judge to determine. In rejecting this argument, the Court deemed it important that the mandatory penalty for using or carrying a machinegun was "six times more severe" than the penalty for using or carrying a mere "firearm," such as a pistol, thereby demonstrating Congress's intent to make each of these a "separate crime." 530 U.S. at 127.

Likewise, in Jones, the Court considered "serious bodily injury" an element of the crime of carjacking rather than a sentencing factor under 18 U.S.C. S 2119 in large part because it increased the authorized penalty by two-thirds. 526 U.S. at 243. The Court worried that leaving such consequential determinations to a judge rather than the jury would relegate the jury to the role of "low-level gatekeeping," resulting in "the erosion of the jury's function." Id. at 244. Such a diminution of the jury's role, the Court cautioned in language foreshadowing Apprendi, "would merit Sixth Amendment concern." Id. at 248.[1]

_____

1. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), a case that preceded Jones and Castillo, the Supreme Court construed a provision of immigration law that increased the maximum prison term for a deported alien who has illegally reentered the country from two to twenty years if his initial deportation was subsequent to an aggravated felony conviction. Despite the tenfold increase in maximum prison time, the Court construed the provision as a sentencing factor rather than an element in large part because recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." Id. at 243. The Court again limited the breadth of this holding a year later in Jones when it noted that Almendarez-Torres "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element. . . ." 526 U.S. at 249. The Court's refusal to consider prior conviction an element in Almendarez-Torres despite the

30

Applying the lessons of Castillo and Jones, it seems clear to me that S 841 establishes multiple offenses based on the elements of drug type and quantity. The maximum penalties authorized by the statute vary greatly depending on type and quantity of the controlled substance. For example, assuming no prior convictions, the maximum penalty for the distribution of a schedule V substance of any quantity is one year, see S 841(b)(3), while the maximum penalty for the distribution of more than 500 grams of cocaine not resulting in any death or serious bodily injury is forty years. See S 841(b)(1)(B)(ii)(II). Even within the same drug type, penalties can vary significantly by quantity alone. Compare, e.g., S 841(b)(1)(B)(vii) (providing a maximum of forty years imprisonment for a violation of subsection (a) involving "100 kilograms or more of a mixture or substance containing a detectable amount of marijuana" for a defendant with no prior convictions), with S 841(b)(1)(D) (providing a maximum of five years imprisonment "[i]n the case of less than 50 kilograms of marihuana [sic]" for a defendant with no prior convictions). I believe that these dramatic differences in the severity of punishment further signal Congress's intent to make drug type and quantity elements of the several offenses established under S 841.

II. Constitutional Doubt

Undergirding my interpretation of S 841 is the time-honored maxim that "constitutionally doubtful constructions should be avoided where `fairly possible.' " Miller v. French, 530 U.S. 327, 336 (2000) (quoting Communications Workers v. Beck, 487 U.S. 735, 762 (1988)). To be sure, a statutory construction ofS 841 that requires proving drug type and/or quantity to the jury beyond a reasonable doubt only when either factor

_____

tenfold increase in penalty, therefore, ought not to be considered in tension with its approach to statutory construction in Jones and Castillo, for, as the Court subsequently made clear in Apprendi, sentence enhancements for prior conviction are sui generis. See Apprendi, 530 U.S. at 490 (announcing the Apprendi rule as applying to "any fact that increases the penalty beyond the prescribed statutory maximum" except "the fact of a prior conviction").

31

increases the maximum statutory penalty avoids constitutional doubt. See, e.g., United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001). In choosing between that construction and the one offered here, however, we ought to be guided by a realistic appraisal of Congress's intent, for although it is our duty to "strain to construe legislation so as to save it against constitutional attack," we"must not and will not carry this to the point of perverting the purpose of a statute . . .' or judicially rewriting it." Aptheker v. Secretary of State, 378 U.S. 500, 515 (1964) (quoting Scales v. United States, 367 U.S. 203, 211 (1961)).

Although I believe that the legislative history and statutory structure indicate that drug type and quantity are elements of a S 841 offense, it is possible that Congress intended them to be sentencing factors for the judge to determine. See United States v. Buckland, 259 F.3d 1157, 2001 U.S. App. LEXIS 17867 (9th Cir. Aug. 9, 2001) (re-affirming, despite Apprendi, an earlier holding finding drug type and quantity always to be sentencing factors for the judge to determine, thereby rendering S 841 unconstitutional). It strains credulity, however, to assert that Congress intended for type and quantity to be treated as sentencing factors in some cases and as elements in others. I know of no statute written in such a manner, nor am I aware of any statutes construed this way. See also Promise, 255 F.3d at 185 (Luttig, J., concurring in the judgment) ("Either facts that affect the sentence a defendant receives are elements or they are not; they are not elements for some purposes and not for others.").

Furthermore, in this case we cannot assume that Congress might have adopted such an unusual approach simply to avoid an Apprendi violation. See Rust v. Sullivan, 500 U.S. 173, 191 (1991) (explaining that the canon of constitutional doubt "is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations"). Congress enacted the most recent relevant structural changes to S 841 in 1986; the Supreme Court issued its Apprendi decision just last year. Indeed, Congress has not amended S 841 at all since the Apprendi decision. The constitutional limitation of Apprendi perforce did not exist at any time at which Congress wrote

32

or re-wrote S 841. Although we can never be entirely certain of what Congress did intend in draftingS 841, we can be sure that Congress did not intend to designS 841 to fit precisely within the contours of a constitutional rule that did not yet exist. It is much more likely that Congress intended for drug type and quantity always to be elements of a S 841 offense. I would, therefore, overrule our prior cases -- e.g., United States v. Lewis, 113 F.3d 487 (3d Cir. 1997); United States v. Chapple, 985 F.2d 729 (3d Cir. 1993); United States v. Gibbs, 813 F.2d 596 (3d Cir. 1987) -- that hold to the contrary.

III. Administrability

While the foregoing discussion explicates my position, it is necessary that I respond to the suggestion that"the sky will fall" if my interpretation prevails. Requiring the prosecution to prove drug type and quantity to the jury beyond a reasonable doubt will not needlessly complicate the trial process. See Promise, 255 F.3d at 157 n.6 ("It will not be unduly difficult for juries to determine whether an offense involved a specific threshold drug quantity."). Since Apprendi, federal district courts have proceeded in this manner, submitting special interrogatories to the jury for determination of drug type and quantity, and many have been operating in this manner since Jones. In the Appendix to this opinion I attach an example of a special interrogatory on drug quantity prepared by the Office of the United States Attorney for the Eastern District of Pennsylvania and used without incident or problem by the judges of the district court since Jones. Furthermore, in some state systems, juries have been routinely performing this function for at least five years. See Promise, 255 F.3d at 157 n.6 (citing State v. Virgo, 947 P.2d 923, 926 (Ariz. Ct. App. 1997); State v. Moore, 698 A.2d 1259, 1264 (N.J. Super. Ct. App. Div. 1997)).

Nor will requiring drug type and quantity to be proved to the jury unduly burden the defendant. Justice Breyer and others have objected to the interpretation I offer because it "could easily place the defendant in the awkward (and conceivably unfair) position of having to deny he committed the crime yet offer proof about how he committed it, e.g., `I did not sell drugs, but I sold no more than 500 grams.' "

33

Apprendi, 530 U.S. at 557 (Breyer, J., dissenting); see also
United States v. Buckland, 259 F.3d 1157, 2001 U.S. App.
LEXIS 17867, at *29-30 (9th Cir. Aug. 9, 2001) (quoting
same). However, if drug quantity were classified as a
sentencing factor for which preponderance of the evidence
is the burden of proof, the defendant would lose the
advantage of forcing the government to prove this oft-
disputed fact beyond a reasonable doubt.[2]

Even if the defendant would be advantaged by having the
issue decided by a judge rather than a jury, as Justice
Breyer contends, such is not the system envisioned by our
Constitution. That system puts its faith in the fairness of a
trial by a jury of one's peers. See Apprendi, 530 U.S. at 498
(Scalia, J., concurring) ("[I]t is not arguable that, just
because one thinks [having a judge determine the facts that
affect the length of a sentence] is a better system, it must

_____

2. Moreover, it seems to me that the kind of scenario feared by Justice
Breyer is often intrinsic to criminal statutes in which penalties vary
according to different elements. In Castillo, the Court concluded that the
type of weapon used in violation of 18 U.S.C. S 924(c), which prohibits
the use or carrying of a "firearm" in relation to a crime of violence, was
an element of an offense under the statute. In an opinion written by
Justice Breyer himself, the Court noted:

>       [I]nasmuch as the prosecution's case underS 924(c) usually will
>       involve presenting a certain weapon (or weapons) to the jury and
>       arguing that the defendant used or carried that weapon during a
>       crime of violence within the meaning of the statute, the evidence
> is
>       unlikely to enable a defendant to respond both  (1) "I did not use
> or
>       carry any firearm," and (2) "even if I did, it was a pistol, not a
>       machinegun."

530 U.S. at 128. I fail to see any principled distinction between S 924(c)
and the position in which the defendant would be placed under my
interpretation of S 841. In either case, the defendant might be forced, as
a matter of trial strategy, to choose between denying the commission of
the crime outright and admitting a lesser amount of wrongdoing in order
to receive a shorter sentence. Perhaps Justice Breyer's distinction is
that
under S 924(c), the prosecution will present to the jury a tangible,
discrete object -- the weapon -- whereas in the drug context, the
prosecution will present only a plastic bag of powder or pills, whose type
and quantity may not be readily apparent to the jury. Such a distinction,
I submit, is too slender a reed upon which to hinge the determination of
element or sentencing factor.

be, or is even more likely to be, the system envisioned by a Constitution that guarantees trial by jury.").

Additionally, I do not believe that my construction of S 841 will result in the overturning of the myriad convictions obtained where drug type and/or quantity were not proved to the jury beyond a reasonable doubt, thereby imposing huge burdens on the court system. Any appeal from such a conviction is likely to be reviewed under the plain error standard. Evidenced by the decision of this court today, plain error analysis will rarely result in the overturning of a conviction. Most of the other courts of appeals engaging in plain error review have similarly declined to exercise their discretion to reverse convictions that have violated Apprendi by not proving drug type and quantity to the jury beyond a reasonable doubt. See cases cited in opinion of the Court, ante, at 20 nn.14-18. Even under the harmless error standard, the evidence of drug quantity adduced at trial, as the cases I have seen in the last decade suggest, is usually so overwhelming as to have not affected the defendant's substantial rights. See, e.g., United States v. Lawson, 2001 U.S. App. LEXIS 18153, at *4 (4th Cir. Aug. 10, 2001) (per curiam).3

IV. Conclusion

Construing S 841 in the manner explained, I nonetheless join the judgment of the Court because I believe, as set forth in Section II.B of the Court's opinion, that the failure to submit drug quantity to the jury did not affect Vazquez's

_____

3. In this case, the indictment alleged drug type and quantity, so Vazquez cannot (and does not) raise the argument that the failure to allege drug type and quantity in the indictment raises different issues on review than failure to prove these factors to a jury beyond a reasonable doubt. Cf. United States v. Gonzalez, 259 F.3d 355, 361 (5th Cir. 2001) (noticing plain error where drug quantity was not included in the indictment for a S 841 offense because "the district court lacks the jurisdiction to impose a sentence exceeding the statutory maximum of the offense alleged in the indictment"); cf. also United States v. Tran, 234 F.3d 798, 809 (2d Cir. 2000) (reversing conviction where the indictment failed to allege "all of the material elements of an offense" without requiring any showing of prejudice by the defendant because the district court lacked jurisdiction to convict the defendant of an offense not properly charged).

substantial rights and that, even if it did, it did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

36

APPENDIX

8. Drug case special interrogatories and verdict form re quantity

COUNT 1 (Conspiracy)

_____ Guilty

_____ Guilty

Jury Interrogatory Number One -- Count 1 (Conspiracy)

If you find the defendant guilty of the conspiracy charged in Count 1, please answer the following question:

-- Do you unanimously agree, by proof beyond a reasonable doubt, that the quantity of cocaine base ("crack") which was distributed and/or intended to be distributed as part of the conspiracy was 50 grams or more?

_____ Yes

_____ No

If your answer to this question is "yes," that concludes Jury Interrogatory Number One. Do not go on to the next question on this page. Proceed to Count 2 of this verdict form.

If your answer to this question is "no," please answer the following question:

-- Do you unanimously agree, by proof beyond a reasonable doubt, that the quantity of cocaine base ("crack") which was distributed and/or intended to be distributed as part of the conspiracy was five (5) grams or more?

_____ Yes

_____ No

COUNT 2 (Distribution)

_____ Guilty

37

_____ Not Guilty

Jury Interrogatory Number Two -- Count 2 (Distribution)

If you find the defendant guilty of the distribution charged in Count 2, please answer the following question:

-- Do you unanimously agree, by proof beyond a reasonable doubt, that the quantity of cocaine base ("crack") which was distributed was 50 grams or more?

_____ Yes

_____ No

If your answer to this question is "yes," that concludes Jury Interrogatory Number Two. Do not go on to the next question on this page.

If your answer to this question is "no," please answer the following question:

-- Do you unanimously agree, by proof beyond a reasonable doubt, that the quantity of cocaine base ("crack") which was distributed was five (5) grams or more?

_____ Yes

_____ No

JURY FOREPERSON

38

39

SLOVITER, Circuit Judge, dissenting, with whom Judges
Mansmann, Nygaard, and McKee join, and with whom
Judges Roth and Rendell join as to Part I.

The majority's opinion is based on the following logic:
Vazquez was convicted after a jury trial of conspiracy to
possess and distribute more than 5 kilograms of cocaine in
violation of 21 U.S.C. SS 846 and 841 respectively; the jury
was instructed to find whether Vazquez conspired to
possess and distribute cocaine but was not instructed to
find the quantity of cocaine involved; following the Supreme
Court's opinion in Apprendi v. New Jersey, 530 U.S. 466
(2000), a jury is required to find beyond a reasonable doubt
any fact that increases the prescribed range of penalties to
which the defendant is exposed by the jury's verdict; in this
case the jury's verdict exposed Vazquez to sentencing under
S 841(b)(1)(C) for which the maximum penalty is 20 years
(240 months) imprisonment; the trial judge, applying a
preponderance of the evidence standard, determined that
Vazquez had been involved with 992 grams of powder
cocaine and 859 grams of crack cocaine and therefore
sentenced Vazquez to 292 months imprisonment; this
constituted a violation of Apprendi, but the court will affirm
because Vazquez didn't contest the amount of drugs at
trial, and the court is confident that the jury would have
made the same determination that the trial judge made, so
the Apprendi violation was not plain error.

There are many bases on which one might take issue
with the logic of the majority's opinion, but I begin by
approaching the majority's opinion on its own terms. That
requires consideration of whether the Apprendi  violation
can meet the plain error inquiry.

I.

A.

The Apprendi Decision

Apprendi, who had fired several shots into the home of
an African-American family, was charged in state court

40

with, inter alia, two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. Under New Jersey law, a second-degree offense carries a penalty range of 5 to 10 years of imprisonment. After Apprendi pleaded guilty to these counts pursuant to a plea agreement, the prosecutor, as permitted by that agreement, filed a motion to enhance Apprendi's sentence under New Jersey's hate crime statute which authorized an enhanced sentence upon the finding of a trial judge, by a preponderance of the evidence, that the defendant committed the crime with a purpose to intimidate a person or group because of race. See N.J. Stat. Ann. S 2C:44-3(e) (West Supp. 1999-2000). Based on Apprendi's own statements made after his arrest, the trial court found that the shooting was racially motivated and sentenced him to 12 years of imprisonment. Apprendi appealed his sentence through the New Jersey courts, contending that the Due Process Clause requires that racial bias be proven to a jury beyond a reasonable doubt, but they upheld the enhanced sentence.

The United States Supreme Court reversed. In reaching its conclusion, the Court noted among the "constitutional protections of surpassing importance" the provision of the Fourteenth Amendment that liberty can be deprived only with due process and the Sixth Amendment guarantee of a trial by jury, which entitle the defendant to a jury determination that s/he is guilty of every element of the crime beyond a reasonable doubt. Apprendi, 530 U.S. at 476. The Court cited to its earlier decision in In re Winship, where it stated: "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 477 (quoting In re Winship, 397 U.S. 358, 364 (1970)) (brackets omitted).

The Apprendi Court examined the historical underpinnings of these principles and, while recognizing that discretion had been accorded to trial judges in their sentencing decisions, reasoned that such discretion cannot deprive a defendant at the time of sentencing "of protections that have, until that point, unquestionably attached." Id. at 484.

41

Finding that the New Jersey statutory scheme under
which a judge may enhance the punishment based on a
finding by a preponderance of the evidence violated due
process, the Court held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond a reasonable
doubt." Id. at 490. In doing so, the Court rejected New
Jersey's argument that racial bias was only a sentencing
factor and not an element of the crime, stating:"the
relevant inquiry is one not of form, but of effect-- does the
required finding expose the defendant to a greater
punishment than that authorized by the jury's guilty
verdict?" Id. at 494.

B.

Vazquez's Sentence

The count of the Superseding Indictment on which
Vazquez was tried and found guilty, and which is at issue
here, charges him with conspiracy to possess with intent to
distribute, and to distribute, more than 5 kilos of cocaine in
violation of 21 U.S.C. S 841, and, following the setting forth
of 10 paragraphs constituting the Overt Acts, states, "All in
violation of Title 21 United States Code, Section 846."

Section 841(a) is entitled "Unlawful acts" and provides
that "it shall be unlawful for any person knowingly or
intentionally -- (1) to manufacture, distribute, or dispense,
or possess with intent to manufacture, distribute, or
dispense, a controlled substance." Section 841(a) does not
prescribe penalties. It is S 841(b), entitled"Penalties," that
prescribes the range of penalties for certain quantities of
controlled substances. Under S 841(b)(1)(A)(iii), the sentence
for a defendant convicted of violating S 841(a) with 50
grams or more of a mixture containing cocaine base (i.e.,
crack cocaine) is not less than 10 years of imprisonment
and no more than life. The sentence under S 841(b)(1)(B)(iii)
for a defendant with 5 grams or more of a mixture
containing cocaine base is not less than 5 years and not
more than 40 years of imprisonment. Section 841(b)(1)(C),

42

often referred to as the catch all provision, contains no drug quantity requirement and provides a maximum possible sentence of 20 years of imprisonment. The majority concedes that S 841(b)(1)(C) "defines Vazquez's prescribed statutory maximum sentence as 20 years." Maj. Op. at 8. The majority then states:"The Apprendi violation occurred when the judge, rather than the jury, determined drug quantity and then sentenced Vazquez to a more than 24-year sentence." Maj. Op. at 8. Surprisingly, it does not remand so that Vazquez can be resentenced to a sentence that does not exceed the maximum authorized by the statute. Instead, it devises a rationale to affirm the sentence that was arrived at in an unconstitutional manner.

I do not understand why the majority's disposition is appropriate, necessary, or just. I note that in Apprendi, the Supreme Court, after finding that the procedure that led to the enhancement of Apprendi's sentence was unconstitutional, reversed and remanded. Of course, Apprendi came to the Court from the New Jersey Supreme Court, not from a federal court, but I see no justification in Apprendi itself for us to do anything different with a District Court judgment.

The majority, however, after noting that Vazquez did not challenge the evidence of drug quantity or object to the court's failure to submit the issue to the jury, 1 sustains the sentence that was unconstitutionally enhanced by applying the plain error standard. Under Rule 52(b) of the Federal

_____

1. Because Apprendi was decided after Vazquez's conviction and sentence, it is understandable that Vazquez did not timely object in the District Court either before or after the instruction on the ground that drug quantity should be submitted to the jury. In United States v. Nance, 236 F.3d 820, 823-24 (7th Cir. 2000), the court considering a similar question stated that because of earlier indications, primarily the opinion of the Supreme Court in Jones v. United States , 526 U.S. 227 (1999), the defendant could have argued that the quantity of the drugs should have been charged in the indictment and proved beyond a reasonable doubt. As a result, the court concluded it would review for plain error. Nance, 236 F.3d at 825. In light of the position I take, I need not consider whether the Jones decision provided a sufficient basis to forewarn criminal defendants that an objection was called for.

43

Rules of Criminal Procedure, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In United States v. Olano, 507 U.S. 725 (1993), the Supreme Court explained that there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." Id. at 732 (quotation marks omitted). The appellate court will then have discretion to correct such an error if it (4)"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted).

The majority agrees that in sentencing Vazquez, the court committed error and that it was plain. It concludes that the error was harmless because Vazquez cannot show that the error affected his substantial rights. The majority bases that conclusion on its determination that the evidence established that Vazquez sold more than 5 grams, which is sufficient to carry a statutory maximum penalty under 21 U.S.C. S 841(b)(1)(B)(iii) of 40 years imprisonment, more than the 24 plus years to which he was sentenced. The majority states that based on its consideration of the evidence "we can say without a doubt that Vazquez conspired to possess and/or distribute the 992 grams of powder cocaine and 859 grams of crack cocaine the authorities found at the Columbia rooming house." Maj. Op. at 16. Therefore, the majority concludes that the Apprendi error did not affect Vazquez's substantial rights.

Completing its plain error inquiry, the majority holds that even if the Apprendi violation affected Vazquez's substantial rights, he cannot establish the fourth factor, i.e., that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. The majority so holds because, it says, Vazquez was the leader of a drug trafficking operation that distributed cocaine in Lancaster County, and a rational jury would certainly have found that he conspired to possess and distribute more than the amount necessary to support a "slightly more than 24-year sentence pursuant to S 841(b)(1)(B)'s 5-to-40-year sentencing range." Maj. Op. at 19.

44

C.

The Substantial Rights Inquiry

I agree with the majority that there was error in sentencing Vazquez and that it was plain. I disagree that the error did not affect Vazquez's substantial rights. Under the plain error inquiry, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. It is the defendant who bears the burden of persuasion. See id. Vazquez's sentence to more than 24 years imprisonment, which exceeds the statutory maximum of 20 years imprisonment under S 841(b)(1)(C) authorized by the jury verdict, clearly affects Vazquez's substantial rights. An error that will cause a defendant to spend four plus years more in prison than statutorily authorized by the jury's verdict necessarily adversely affects the defendant's substantial rights.

I find it curious that the majority never acknowledges that additional time in prison could affect substantial rights. In other contexts, courts of appeals have not hesitated to conclude that an error resulting in an increase in the defendant's sentence affected the defendant's substantial rights. See, e.g., United States v. Anderson, 201 F.3d 1145, 1152 (9th Cir. 2000) ("An error that results in a longer sentence undoubtedly affects substantial rights."); United States v. Martinez-Rios, 143 F.3d 662, 676 (2d Cir. 1998) (finding clerical error which increased defendant's sentence by several months to affect substantial rights). Indeed, the Supreme Court recently held in Glover v. United States, 531 U.S. 198 (2001), that an increase in a defendant's sentence of at least six months was prejudicial in relation to an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984). Of relevance here, the Court noted that "any amount of actual jail time has Sixth Amendment significance." Glover, 531 U.S. at 203; see also United States v. Knight , No. 99-5642 (3d Cir. Sept. 6, 2001) (holding application of an incorrect sentencing guideline range affected substantial rights and was plain error even though sentence was also within correct range).

45

In Apprendi violation cases, numerous courts have recognized that extra prison time affects substantial rights. In United States v. Nordby, the Ninth Circuit stated that "[f]ive additional years of imprisonment were imposed beyond that authorized by this verdict, which easily affected [defendant's] substantial rights." 225 F.3d 1053, 1060 (9th Cir. 2000). It reiterated that holding the following year in United States v. Buckland, 2001 WL 893440, *9, reh'g en banc granted, 2001 WL 1091167 (9th Cir. 2001) ("Imposing a sentence that is seven years more than the maximum sentence constitutionally permitted under the facts as found by the jury undoubtedly `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "). Morever, the Tenth Circuit in United States v. Jones, 235 F.3d 1231 (10th Cir. 2000), recognized that it "regularly has found reversible error when the sentence imposed by the district court exceeded the statutory maximum penalty applicable to the offense of conviction." Id. at 1238. Even courts that did not ultimately reverse on the basis of an Apprendi error have recognized that prison sentences in excess of the applicable maximum affect substantial rights. See United States v. Promise , 255 F.3d 150, 150, 160–61 (4th Cir. 2001); see also United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001) (assuming that Apprendi error that increased defendant's sentence by over 7 years affected his substantial rights); Nance , 236 F.3d at 825–26 (same).[2]

Because the majority opinion would leave intact a sentence beyond the statutory maximum that was not based on a jury finding under the beyond–a–reasonable– doubt standard, thereby ignoring established constitutional principles, I cannot see how the effect could be other than to impugn the "fairness, integrity and public reputation" of the judicial process. The fact that the majority condones a process by which a judge usurped a determination within the jury's province strikes at the reputation of the judicial

_____

2. In affirming the sentences, these courts shifted the inquiry from the effect on substantial rights to the discretionary question referred to in Olano, which was whether the error was one that"seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," 507 U.S.
at 732.

proceedings here. Cf. Apprendi, 530 U.S. at 498 (Scalia, J. concurring) ("Judges, it is sometimes necessary to remind ourselves, are part of the State . . . . The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free.") (parenthesis omitted).

In determining that Vazquez's substantial rights were not affected, the majority relies on the Supreme Court's decisions in Johnson v. United States, 520 U.S. 461 (1997), and Neder v. United States, 527 U.S. 1 (1999), where the Court held that erroneous jury instructions did not require reversal. However, the substantial rights inquiry in those cases was not the same as it is here.

In Johnson, the trial judge had instructed the jury that the materiality of the statements was an issue for the judge and not the jury to decide, and the defendant did not object to this instruction. Johnson, 520 U.S. at 463. After Johnson's conviction, the Supreme Court decided United States v. Gaudin, 515 U.S. 506 (1995), which held that the materiality of a false statement must be decided by a jury. Johnson, 520 U.S. at 463. The Supreme Court held that Johnson had not established the fourth prong of the plain error standard -- that the error seriously affected the fairness, integrity or public reputation of judicial proceedings. In so holding, the Court noted that the evidence supporting materiality was overwhelming and that the defendant presented no plausible argument that her false statements under oath were not material. See id. at 470.

In Neder, the error was similar, i.e., the trial court's failure to charge the jury on the materiality of the false statements or omissions for which the defendant was convicted. The defendant in Neder had objected to the instruction, so the Court's discussion on prejudice was in the context of a harmless error analysis. See 527 U.S. at 6-7, 15. The Court held there was overwhelming evidence of the materiality of the statements, and hence the omission of the charge was harmless error. See id. at 16-20.

47

In neither case was the sentence at issue; rather the issue was whether to uphold or reverse the jury's verdict of guilt. Here, we must decide whether an increase in prison time as a result of the error affects the defendant's substantial rights. As a result, those cases are inapposite here.

Instead of affirming the sentence on the ground that Vazquez's substantial rights were not affected, as the majority does, I would follow the disposition recently reached by some of our sister circuits who, after finding an Apprendi error in sentencing the defendant, vacated the sentence and remanded for resentencing within the statutory maximum sentence authorized by the jury verdict. See, e.g., United States v. Martinez , 253 F.3d 251, 255–56 (6th Cir. 2001) (vacating the defendants' sentences and remanding for resentencing because the sentences exceeded the maximum sentence authorized by the jury verdict by 12 and 15 years respectively); United States v. Ray, 250 F.3d 596, 603 (8th Cir. 2001) (remanding for resentencing because the defendant's 97 month sentence of imprisonment exceeded the statutory maximum of 60 months); United States v. Velazquez, 246 F.3d 204, 218–19 (2d Cir. 2001) (vacating the defendant's sentence and remanding for sentencing because the sentence exceeded by four months the maximum that could be imposed without a jury determination of an element of the crime); United States v. McWaine, 243 F.3d 871, 875–76 (5th Cir. 2001) (vacating the sentence and remanding for resentencing because the defendant's life sentence exceeded the 20–year statutory maximum sentence authorized by the jury); United States v. Jones, 235 F.3d 1231, 1238 (10th Cir. 2000) (remanding for resentencing because the actual sentence of 30 years exceeded the 20–year statutory maximum sentence authorized by the jury verdict); United States v. Nordby, 225 F.3d 1053, 1060 (9th Cir. 2000) (remanding for resentencing because "[f]ive additional years of imprisonment were imposed beyond that authorized by this verdict, which easily affected [defendant's] substantial rights."). Although not every court that has found an Apprendi violation followed the course of these cases, I believe that course is the one demanded by justice.

48

II.

In reaching its conclusion to affirm Vazquez's sentence, the majority rejects Vazquez's argument that the Apprendi error was a structural defect. Structural defects are per se prejudicial and pretermit the substantial rights inquiry. Johnson v. United States, 520 U.S. 461, 468 (1997). The majority reasons that "Apprendi violations result in both trial and sentencing errors, albeit ones that rise to a constitutional dimension," Maj. Op. at 15; that the Supreme Court has instructed that most constitutional errors can be harmless; that both trial errors and sentencing errors have been subjected to harmless or plain error analysis; and that therefore "an Apprendi violation is not a structural defect." Maj. Op. at 15.

I believe the majority's syllogism is flawed and that the issue of an Apprendi violation as a structural defect merits more analysis than has been given to it in the cases, including even those cases that have reversed sentences imposed in violation of Apprendi and remanded for resentencing.

In Chapman v. California, 386 U.S. 18 (1967), even though the Court held that constitutional errors could be harmless, it also recognized that there are some constitutional errors that are not subject to harmless error analysis. Chief Justice Rehnquist referred to them in Arizona v. Fulminante, 499 U.S. 279 (1991), as involving rights "so basic to a fair trial that their infraction can never be treated as harmless error." Id. at 308 (quoting Chapman, 386 U.S. at 23). Structural defects occur in a limited class of cases, such as where there has been a complete denial of counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963), a biased trial judge, see Tumey v. Ohio, 273 U.S. 510 (1927), unlawful exclusion of grand jurors of defendant's race, see Vazquez v. Hillery, 474 U.S. 254 (1986), denial of self-representation, see McKaskle v. Wiggins, 465 U.S. 168 (1984), denial of public trial, see Waller v. Georgia, 467 U.S. 39 (1984), or a defective reasonable-doubt instruction to the jury, see Sullivan v. Louisiana, 508 U.S. 275 (1993). Such errors have been termed "structural" because each involves a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial

49

process itself." Johnson, 520 U.S. at 468 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)).

Perhaps the Sullivan case best illustrates a structural error. As explained in Justice Scalia's opinion for a unanimous Court, a constitutionally defective reasonable-doubt instruction violated the Sixth Amendment right to trial by jury, a right that is " `fundamental to the American scheme of justice.' " 508 U.S. at 277 (quoting Duncan v. Louisiana, 391 U.S. 145, 149 (1968)).

Sullivan was convicted by a jury following a charge that defined a reasonable doubt in terms of "a grave uncertainty," a definition that did not meet constitutional standards. Justice Scalia began his discussion why such an error was not amenable to harmless-error analysis with the principle that the most important element in the Sixth Amendment right to trial by jury is "the right to have the jury, rather than the judge, reach the requisite finding of `guilty.' " Id. He continued, "although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence." Id. (emphasis added).

Having established the constitutional principle, he then considered whether the Court could uphold the jury verdict on the basis of harmless error, stating that "[h]armless-error review looks . . . to the basis on which `the jury actually rested its verdict.' " Id. at 279 (alteration in original) (quoting Yates v. Evatt, 500 U.S. 391, 404 (1991)). The inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id. "That must be so, because to hypothesize a guilty verdict that was never in fact rendered -- no matter how inescapable the findings to support that verdict might be -- would violate the jury-trial guarantee." Id.

It appears that the majority in this case rejects the possibility that the Apprendi violation was a structural defect by reliance on the Supreme Court's decisions in Johnson and Neder. Johnson had argued that the error, the

50

failure to instruct the jury that it must decide the materiality of the false statements, was a structural defect and therefore outside the scope of Rule 52(b). The Johnson Court stated that "[i]t is by no means clear" whether the failure to submit an element of the offense to the jury was a structural error. 520 U.S. at 469. It continued,"Sullivan v. Louisiana, the case most closely on point, held that the erroneous definition of `reasonable doubt' vitiated all of the jury's findings because one could only speculate what a properly charged jury might have done." Id.  The Court then noted that the failure to submit materiality to the jury "can just as easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis, as it can be to failing to give a proper reasonable-doubt instruction altogether." Id. (citations omitted). The Court did not resolve this question because it affirmed the conviction notwithstanding the error on the ground that Johnson had not established the fourth prong of the plain error standard. Id. at 469-70.

In Neder, the Court undertook the analysis of structural defects it avoided in Johnson. The Court considered and rejected the defendant's argument that the error-- the trial court's omission of an element of the offense from the jury instruction -- was a structural defect. 527 U.S. at 8-15. The Court reviewed the numerous cases in which it held that various trial errors were not structural defects. Among those were cases dealing with improperly instructing the jury on an element of the offense, see California v. Roy, 519 U.S. 2 (1996), erroneous mandatory conclusive presumptions, see Carella v. California, 491 U.S. 263 (1989), and erroneous mandatory rebuttable presumptions, see Yates v. Evatt, 500 U.S. 391 (1991). Similarly, it noted that the Court had previously held that harmless-error analysis applies to the erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination, see Arizona v. Fulminante, 499 U.S. 279 (1991), and the erroneous exclusion of evidence in violation of the Sixth Amendment right to confront witnesses, see Delaware v. Van Arsdall, 475 U.S. 673 (1986).

The error in Neder's case was not a structural defect because it "[did] not necessarily render a criminal trial

51

fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder, 527 U.S. at 9 (emphasis omitted). That is, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." Id. at 17.

Therefore, if the majority is correct that the error here was the failure to submit an element of the offense to the jury, then there would be no basis to argue that the error in this case was a structural defect. However, I believe that an Apprendi error is an error of a different dimension. There were at least two constitutional violations identified in Apprendi. One dealt with the issue of the respective roles of the jury and judge. See Apprendi, 530 U.S. at 477. The other dealt with the standard of proof, the requirement that the government prove a criminal defendant guilty beyond a reasonable doubt. See id. at 478. It is arguable that after Neder, a trial error that enables a judge, rather than a jury, to determine one of the elements of the offense is not a structural defect, although Justice Scalia's dissent in Neder persuades me (albeit not a majority of the Court) that it should be so regarded.

In his Neder opinion, Justice Scalia characterized Johnson as standing "for the proposition that, just as the absolute right to trial by jury can be waived, so also the failure to object to its deprivation at the point where the deprivation can be remedied will preclude automatic reversal." Neder, 527 U.S. at 35. Following Justice Scalia's reading of Johnson in Neder, one might argue that even if Vazquez waived his jury trial right by failing to contest the trial court's arrogation of the jury's obligation to decide drug quantity, an element of the crime, this case is unlike both Johnson and Neder because an Apprendi violation also implicates the right to be convicted under a beyond-a-reasonable-doubt standard.3

_____

3. As the Neder majority observed, appellate inquiry into "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element . . . . `serve[s] a very useful purpose

52

Nothing in either Johnson or Neder, or any other case of which I am aware, justifies treating the failure to apply the beyond-a-reasonable-doubt standard to drug quantity as anything other than a structural defect. That failure, I believe, is comparable to the structural defect in the constitutionally deficient beyond-a-reasonable-doubt instruction found in Sullivan. The Due Process Clause, Sullivan explains, requires that the prosecution persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish all elements of the offense. 508 U.S. at 277-78. If there is no jury verdict finding petitioner guilty beyond a reasonable doubt, "[t]he most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubt." Id. at 280. "That," said the Court in Sullivan,"is not enough." Id. And further, "[t]he Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal." Id.

In Apprendi, the Court discussed separately the two rights -- the one that requires trial by jury and"the companion right to have the jury verdict based on proof beyond a reasonable doubt." 530 U.S. at 478. The Court commented, "The `demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.' " C. McCormick, Evidence S 321, pp. 681-682 (1954); see also 9

_____

insofar as [it] block[s] setting aside convictions for small errors or defects
that have little, if any likelihood of having changed the result of the trial.' " Neder, 527 U.S. at 19 (quoting Chapman v. California, 386 U.S. 18, 22 (1967)). At the conclusion of its rejection of the structural error claim, the Court observed: "Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial -- a retrial not focused at on the issue of materiality, but on contested issues on which the jury was properly instructed." Id. at 15. In Vazquez's case, there would be no retrial, only a remand for resentencing.

53

J. Wigmore, Evidence S 2497 (3d ed.1940)." Id. (quoting In
re Winship, 397 U.S. 358, 361 (1970)). Apprendi reaffirmed
the pronouncement in Winship that "the`reasonable doubt'
standard among common-law jurisdictions `reflect[s] a
profound judgment about the way in which law should be
enforced and justice administered.' " Id.  (quoting Winship,
397 U.S. at 361-62) (quotation omitted).

In the Supreme Court cases discussing structural
defects, the Court consistently lists among the errors that
it has found to be structural the defective reasonable-doubt
instruction in Sullivan. It did so in Johnson and it did so in
Neder. See Neder, 527 U.S. at 8; Johnson, 520 U.S. at 469.
In contrast, in Vazquez's case, the trial judge made the
finding of drug quantity by a preponderance of the
evidence. It is the majority that first applies the beyond-a-
reasonable-doubt standard to drug quantity.

While it is true that the jury made findings sufficient to
sustain a S 841(b)(1)(C) verdict under a beyond-a-
reasonable-doubt standard, it did not so find as to the
amount of drugs under any other provision of S 841(b). It is
this defect, which, while it did not "infect the entire trial
process," Brecht v. Abrahamson, 507 U.S. 619, 630 (1993),
as most structural defects have done, infected the portion
of the criminal proceedings at issue here, i.e., the sentence,
and I see no reason why the same structural defect analysis
that applies in the other cases which the Court agrees defy
harmless-error review would not apply to the sentence. I
believe that the majority opinion undermines, indeed
nullifies, the long tradition in American constitutional
criminal jurisprudence that it is the jury, rather than the
judge, that must determine the offense for which the
defendant has been sentenced and that it must so find
beyond a reasonable doubt.4 I would therefore hold that we
_____

4. Justice Scalia closes his Neder dissent with the following quote from
Blackstone,

     However convenient [intrusions on the jury right] may appear at
     first, (as doubtless, all arbitrary powers, well executed, are the
most
     convenient,) yet let it be again remembered that delays and little
     inconveniences in the forms of justice are the price that all free
     nations must pay for their liberty in more substantial matters;
that

must remand for a new sentencing hearing.5

_____

> these inroads upon this sacred bulwark of the nation are
> fundamentally opposite to the spirit of our constitution; and that,
> though begun in trifles, the precedent may gradually increase and
> spread to the utter disuse of juries in questions of the most
> momentous concern.

Neder, 527 U.S., at 39-40 (quoting 4 Blackstone, Commentaries *350).

5. Although I believe that Chief Judge Becker's concurrence may have much to commend it, it is not the rationale adopted by the majority opinion. I would therefore leave the question of the interpretation of the relevant drug statutes for decision in another case where the defendant's sentence is not inconsistent with the teaching of Apprendi, as the government concedes in this case.

RENDELL, Circuit Judge, dissenting.

I agree with Part I of Judge Sloviter's dissent. I write separately to express my view that the majority has written a new chapter in the book of plain error review of sentencing, and, I further suggest, has rewritten Apprendi and Williams.

In Apprendi, the Supreme Court held that the New Jersey statutory scheme "cannot stand," because, after the jury convicted the defendant of a second degree offense, the statute allowed a judge to impose punishment identical to what New Jersey provides for crimes of the first degree, provided that the judge found, by a preponderance of the evidence, that the defendant's purpose for unlawfully possessing the weapon was to intimidate his victim on the basis of a particular characteristic the victim possessed. 530 U.S. at 491-92. In Williams, we determined that an Apprendi error will only be found to have occurred if the judge actually imposes a sentence that is above a certain threshold, namely, the maximum sentence allowable for the crime of which the defendant was convicted. 235 F.3d at 863.

I submit that we ignore the teachings of both of these cases in issuing the majority opinion today. I say this because we are advocating the judicial determination of the proof that supports a certain sentence, contrary to the specific dictates of Apprendi, and we are forgetting that, in Williams, our analysis was based upon our view that an Apprendi error is a sentencing error, not an error that occurs at trial. I submit that the majority opinion writes a new chapter regarding plain error analysis in the sentencing context, because the law as it presently exists requires resentencing in the event that a sentence has been imposed in violation of the law, 18 U.S.C. S 3742,1 and even

_____

1. 18 U.S.C. S 3742(f)(1) provides:

    (f) Sentence and disposition--If the court of appeals determines that the sentence--

    (1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate. . ..

Id.

56

under the microscope of plain error review, we have had
little difficulty noticing an error and remanding cases for
resentencing where substantial rights were affected and the
integrity of our system had been undermined by illegal
sentences.2

Today, we are not requiring a new sentencing proceeding,
nor are we even saying that a new trial should occur, which
could arguably follow from the logic and language of
Apprendi. Rather, we search for a way to uphold an
offensive, unconstitutional sentence, although there is no
intimation in Apprendi that such a sentence can ever be
countenanced, in the first instance, let alone preserved by
the jurists' view of what may have occurred.

The majority's discussion of the "substantial rights" or
"prejudice" inquiry that we must make under plain error
review does not focus on the tenor and logic of the Supreme
Court's opinion in Apprendi,3 but, rather, it reaches out and
follows the reasoning of Johnson and Neder. However, in
doing so, the majority overlooks the fact that the Supreme
Court in Apprendi never alludes to Johnson or Neder, and
we, in Williams, never intimated that this is an appropriate

_____

2. For example, we previously have addressed sentencing errors such as
those implicated by a trial court's improper guideline calculation, and
have found that such mistakes are sufficiently prejudicial to warrant
relief under the plain error standard. E.g., United States v. Felton, 55
F.3d 861, 869 n.3 (3d Cir. 1995) ("This circuit and others have found
that the miscalculation of a defendant's offense level `certainly is error
that seriously affect[s] [the defendant's] rights, and so amounts to plain
error.' ") (quoting United States v. Pollen, 978 F.2d 78, 90 (3d Cir.
1992)
(alteration in original); Pollen, 978 F.2d at 90 ("The district court's
improper calculation . . . , resulting in a significantly higher Guideline
sentencing range, certainly is an error that seriously affected
[defendant's] substantial rights and so amounts to plain error.").

3. As the Supreme Court explained in Olano :

    The third and final limitation on appellate authority under Rule
    52(b) is that the plain error "affec[t] substantial rights." This
is the
    same language employed in Rule 52(a), and in most cases it means
    that the error must have been prejudicial: It must have affected
the
    outcome of the judicial proceedings.

507 U.S. at 734 (alteration in original) (quoting Fed. R. Crim. P. 52(b)).

57

exercise. I submit that we were right in not doing so, since Johnson and Neder involved trial errors rather than sentencing errors such as that implicated in Apprendi and the instant case.4 Thus, the Court's method of analysis in those cases cannot be so easily imported into this distinctly different situation.

In Johnson, the error at issue was the district court's failure, in a perjury prosecution, to submit the issue of materiality of the false statements to the jury. 520 U.S. at 467. Rather than having the jury decide that issue, the district court instructed the jury that it had determined that the defendant's statements were material, and the defendant did not object to the instruction as such. On appeal, the defendant claimed that the district court committed plain error in failing to submit the issue of materiality to the jury, and that the error "rendered her conviction invalid" under Supreme Court precedent. Id. at 464. The Supreme Court rejected that argument, and found that the error, while "plain," did not warrant correction under the last prong of Olano because there was "overwhelming" and "uncontroverted" evidence that the statement was material, and thus, the "fairness, integrity or public reputation of the judicial proceedings" would not be seriously affected by its failure to correct the error. Id. at 470. The Court expressly noted the fact that correcting the error in such a case would yield the opposite result because it would require "the reversal of a conviction." Id.

Neder involved the same error -- the failure to submit the element of materiality to the jury -- and the Court there determined that the error was subject to harmless error review. 527 U.S. at 8-9. In conducting its harmless error/prejudice inquiry, the Court applied the following test in view of the nature of the error at issue: "whether it

_____

4. The majority states that we are presented with a combination of trial and sentencing errors. I am not sure what that means, and the majority has provided no supporting authority for its new category of error. Maj. Op. at 12. Clearly, we have a sentencing error, probably due to someone's error at trial -- most likely, the government's -- but I submit that there is no argument that the District Court actually committed error during the trial itself, and there has been no request for a new trial
on that basis.

58

appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 15 (emphasis added). The Court answered that question by reference to the trial record, and concluded that "no jury could reasonably find" that the defendant's actions were not material. Id. at 16.

Based on the Court's analysis in Neder, the majority pretends to ask the same question in assessing prejudice to the defendant, but it actually asks a different one:"whether [the sentence] would have been the same absent the failure to submit drug quantity for a jury determination." Maj. Op. at 16. However, given that I view the Apprendi error as having occurred at sentencing, and given the question asked in Neder (if we really are to draw on Neder as a guide), the appropriate question to ask in assessing the third element of the plain error analysis under Olano is whether, in the context of the sentencing proceedings, it appears beyond a reasonable doubt that the Apprendi error complained of -- sentencing a defendant to a greater term of imprisonment than that permitted under the law-- contributed to the sentence obtained. E.g., Sochor v. Florida, 504 U.S. 527, 540 (1992) (applying harmless error analysis and asking whether, in the context of the sentencing proceedings, a sentencing error " `was harmless beyond a reasonable doubt' in that `it did not contribute to the sentence obtained' ") (quoting Chapman v. California, 386 U.S. 18, 24 (1967)); Richmond v. Lewis, 506 U.S. 40, 49 (1992) (explaining when a sentencing error occurs, such as consideration of invalid aggravating circumstance, harmless error review requires courts to "actually perform a new sentencing calculus, if the sentence is to stand"); Parker v. Dugger, 498 U.S. 308, 319 (1991) (describing harmless error analysis in the context of sentencing proceedings as requiring a determination of whether the sentencing error "would have made no difference to the sentence"); Clemons v. Mississippi, 494 U.S. 738, 753 (1990) (stating that harmless error analysis in the context of sentencing proceedings must ask whether "it was beyond a reasonable doubt that the sentence would have been the same" had there been no sentencing error). Plainly, the answer is "yes," because if the District Court had not sentenced Vazquez to more than the prescribed statutory

59

maximum for the offense for which he was convicted, he would have received less prison time than he actually received. Thus, his substantial rights were affected.

Similarly, in assessing whether we should correct the error under the last prong of Olano, the issue is not, as it was in Johnson, whether the trial proofs indicate that the fairness and integrity of the trial proceedings would not be impugned by the fact that judge rather than the jury made the determination at issue, given the strength of the evidence. Rather, given the language and logic of Apprendi, we should ask whether the error affected the sentencing in a way that affects the fairness and integrity of the judicial proceedings. And, unlike the situation presented in Johnson, our correction of the error would not result in the reversal of a conviction; rather, the remedy for the unconstitutionally imposed sentence is a remand for resentencing in accordance with the jury's verdict.

Clearly, one cannot read Apprendi without realizing that, not only are substantial rights affected by the Apprendi sentencing error,5 but also the public reputation of judicial

_____

5. As Judge Sloviter's dissent points out, several of our sister circuits have recognized that an Apprendi violation constitutes an error that affects a defendant's substantial rights. E.g. , United States v. Buckland,
___ F.3d. ___, 2001 WL 893440, at *9, reh'g en banc granted, 2001 WL 1091167 (9th Cir. Aug. 9, 2001) ("Imposing a sentence that is seven years more than the maximum sentence constitutionally permitted under the facts as found by the jury undoubtedly seriously affects the fairness, integrity or public reputation of the judicial proceedings.") (internal quotation marks omitted); United States v. Maynie, ___ F.3d ___, 2001 WL 856142, at *8 (8th Cir. July 30, 2001) (finding "that greater, and improper, infringement of defendants' liberty substantially affected their rights"); United States v. Miranda, 248 F.3d 434, 444 (5th Cir. 2001) ("Because Appellants were sentenced to serve between 20-30 years of incarceration--considerably longer than the maximum sentences available pursuant to the jury determination under the federal drug offense statute, . . . the error clearly affected . . . substantial rights.");
United States v. Noble, 246 F.3d 946, 955 (7th Cir. 2001) (concluding that "[t]he Apprendi error substantially prejudiced Noble's rights by extending his sentence 10 years in excess of the statutory maximum"); United States v. Page, 232 F.3d 536, 544 (6th Cir. 2000) (stating that "[t]here is no doubt that imposing additional years of imprisonment beyond that authorized by a jury's verdict affects a defendant's substantial rights"), cert. denied, 121 S.Ct. 2002 (2001).

60

proceedings is affected by the sentencing of a defendant to more prison time than the maximum permissible based on the crime charged and the jury's verdict. In Apprendi, the focus was on New Jersey's statutory scheme, and the Court was not faced with having to apply Fed. R. Crim. P. 52(b) because the issue came before the Court on an appeal from a guilty plea entered in New Jersey state court. Thus, we must speculate from its language precisely what the Court really would do in a situation such as this. But the language in Apprendi does not make this a difficult exercise. There the Court referenced the differential in sentencing between what Apprendi would have received without the finding of a biased purpose, and what he could receive with it, stating that it was "more than a nominal effect." Apprendi, 530 U.S. at 495. The Court then stated: "Both in terms of absolute years behind bars, and because of the more severe stigma attached, the differential here is unquestionably of constitutional significance." 6 Id. It concluded its opinion by stating that "[t]he New Jersey procedure challenged in this case is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Id. at 497.

To my mind, in order to read Apprendi in a way that would be what the majority holds today, we would have to read into, or add to, the Court's closing statement the following:

> Of course, on the other hand, if reasonable jurists can determine from the record that the jury would have found the necessary element or sentencing factor beyond a reasonable doubt, then the jury's actual

_____

6. As an aside, I should note that by concentrating on our divergence from Apprendi and Williams, I do not downplay the constitutional significance of the fact that Vazquez was never indicted for the crime for which he has been sentenced. As eloquently stated by Judge Motz in her powerful partial dissent in United States v. Promise, 255 F.3d 150 (4th Cir. 2001), the end result of the Apprendi violation meant that "the district court sentenced [the defendant] as if he had been indicted and convicted of a far more serious offense, imposing on[him] ten more years of imprisonment than the offense for which he was actually indicted and convicted permits." Id. at 189 (Motz, J., concurring in part, dissenting in part).

finding on that element, and its verdict, is not such an indispensable part of our criminal justice system. In such circumstances, the otherwise unconstitutional sentence may nevertheless stand.

I believe the tone and language of Apprendi preclude any such reading. In fact, the very language of Apprendi quoted by the majority seems to negate this idea. Maj. Op. at 7-8 (stating that the Court in Apprendi "endorsed the following concept: `It is unconstitutional for the legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' ") (quoting Apprendi, 530 U.S. at 490) (internal quotation marks omitted).

If we follow the logic of the majority, the government can charge and convict a defendant of manslaughter, but sentence him for murder, and, as long as the government produced evidence at trial that would support that sentence, we would not notice or correct the error under Rule 52(b) and require resentencing in accordance with the jury's verdict. That result is not what Johnson and Neder stand for, nor is it what the Supreme Court envisioned. E.g., United States v. Promise, 255 F.3d 150, 190 (4th Cir. 2001) (Motz, J., concurring in part, dissenting in part). If anything, it is just the opposite. In fact, in Apprendi, the Supreme Court noted disapprovingly, "Indeed, the effect of New Jersey's sentencing `enhancement' here is unquestionably to turn a second-degree offense into a first-degree offense under the state's own criminal code." 530 U.S. at 494.

For these reasons, I join in Judge Sloviter's dissent in Part I.

However I disagree with Judge Sloviter's conclusion that the error is structural, because it is, again, a sentencing error. It did not occur until the sentence exceeding the maximum allowed was pronounced. The error did not "infect the entire trial process" and "unnecessarily render [the] trial fundamentally unfair." Neder, 527 U.S. at 8. I can find no Supreme Court opinion that suggests that a

62

sentencing error can be "structural." In fact, Judge Sloviter appears to fall somewhat into the trial error trap of Neder and Johnson in her discussion in Part II, when she speaks of the need for the jury, not the judge, to determine the offense. While that is the nature of the discussion in Apprendi, because it focuses on the statutory scheme, in light of Williams, that is not the nature of the error before us. What kind of error is it if a defendant is sentenced to a term greater than the maximum allowable for that offense? I submit that it is a sentencing error, that it is constitutional, not structural, and that the error is plain in any event.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

63