SMITH, Circuit Judge,
concurring, joined by McKEE, Chief Judge, AMBRO and JORDAN, Circuit Judges.
Jermel Lewis was charged with and convicted of using or carrying a firearm, but was eventually sentenced on the basis of a different, aggravated crime. Conviction of the aggravated crime would have required proof of an element unnecessary to a using or carrying offense: that Lewis had brandished a firearm. Lewis’s indictment did not charge him with brandishing, nor did the jury find that he had committed that crime beyond a reasonable doubt. Yet Lewis was subjected to the enhanced mandatory minimum sentence required for brandishing. I agree with the majority that this error demands resentencing; the new sentence should be based solely on the crime with which Lewis was actually charged and for which he was convicted. But I would hold that this error was structural and therefore reversible if properly preserved. Structural errors do not require a court to inquire into whether the error was harmless.
I.
Analysis of the nature of the error here begins with determining whether sentencing a defendant for an uncharged crime is a “pure sentencing error” as the majority *459 describes it, or instead is an error that is inextricable from the contours of the indictment. Our previous en banc decision in United States v. Vazquez, 271 F.3d 93 (3d Cir.2001), provides the lens through which the error in this case must be viewed. There we considered a violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in which the defendant was charged and tried for conspiracy to possess and distribute more than five kilograms of cocaine, a quantity sufficient to warrant an enhanced sentence. Vazquez, 271 F.3d at 98. But the jury was not asked to find drug quantity. Id. Nevertheless, the district court sentenced the defendant to 292 months’ incarceration — over four years more than the applicable statutory maximum for a. conviction without quantity — after finding by a preponderance that the defendant had been “involved with”[1] nearly two kilograms of cocaine. Id. at 98-99. While the case was on direct appeal, the Supreme Court decided Apprendi. Id. at 99. Applying Apprendi retroactively, we said the failure to submit drug quantity to the jury yet imposing an enhanced sentence for quantity was “not just a sentencing error but also a trial error” because
the sentencing error (imposing a sentence beyond the prescribed statutory maximum) is inextricably intertwined with a trial error (failing to submit an element of the offense to the jury). On the one hand, the trial error exists only because of the sentencing error. On the other hand, the sentencing error cannot occur without the trial error.
Id. at 101. Thus, we chose not to view the error in Vazquez as a pure sentencing error because “the realities concerning the nature of Apprendi violations” required a different result. Id.
This was also “more consonant” with the approaches taken in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Vazquez, 271 F.3d at 102. Both Neder and Johnson involved the trial court’s failure to submit a required element of a defendant’s conviction to the jury.[2] Neder, 527 U.S. at 18-19, 119 S.Ct. 1827; Johnson, 520 U.S. at 470, 117 S.Ct. 1544. We reasoned that because the errors in Neder and Johnson were “trial error[s] resulting] in a constitutional defect,” the failure to submit an element to the jury resulting in a sentence violating Apprendi must also constitute both trial and sentencing error. Vazquez, 271 F.3d at 102.
A similar series of events tainted the proceedings here. The indictment charged Lewis with using and carrying a firearm, and the District Court properly instructed the jury as to that charge. Yet the District Court applied the enhanced mandatory minimum for brandishing. The omission of brandishing from the jury instructions and the resulting error in sentencing for brandishing stemmed from the Government’s decision not to charge brandishing in the indictment. Similarly, the indictment was lacking only because the District Court sentenced Lewis for brandishing. Although prosecutorial discretion permitted the Government to charge Lewis for a less significant crime than the evidence might support, see United States v. Esposito, 968 F.2d 300, 306 (3d Cir.1992) (“In our criminal justice system, *460 if the prosecutor has probable cause to believe a crime has been committed and that the accused committed it, the decision whether or not to prosecute and what charges to file generally rests within the prosecutor’s broad discretion.”), the Government’s decision not to charge brandishing gained constitutional significance, when the District Court sentenced Lewis for the uncharged brandishing offense.
The majority concludes that “[t]he error here was a sentencing error, as nothing was wrong with Lewis’s indictment or trial.” But the same could have been said in Vazquez: The instructions to the jury were sufficient to support a conviction and sentence for a lesser-included offense that did not require proof of drug quantity, and the sentencing court erred by imposing a sentence greater than that reflected in the instructions. Indeed, we characterized the sequence of events in Vazquez as a combined “trial and sentencing error” despite there being nothing incorrect about instructing the jury and securing a conviction on a lesser-included offense, as opposed to the aggravated crime charged in the indictment. See Schmuck v. United States, 489 U.S. 705, 717, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (Rule 31(c) of the Federal Rules of Criminal Procedure “suggests that a lesser included offense instruction is available in equal measure to the defense and to the prosecution”); Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (“[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.”); see also United States v. Petersen, 622 F.3d 196, 207 (3d Cir.2010) (affirming conviction for lesser-included offense under plain-error review where jury was instructed only as to aggravated offense). Accordingly, that the indictment here was initially error-free does not control whether we must nevertheless consider the charges Lewis faced to assess the implications of his erroneous sentence for brandishing.
Indeed, as in Vazquez, the realities of the AUeyne error here support the view that the District Court’s error was not limited merely to sentencing. The Government from the outset alleged facts consistent with brandishing. The second superseding indictment described Lewis’s and his co-defendants’ overt acts in relation to the Government’s conspiracy count as follows:
Defendants Glorious Shavers, Andrew White, and Jermel Lewis- burst through the front door of the Speakeasy armed with handguns and a shotgun, announced a robbery, forced customers and employees to the floor, threatened to shoot them, herded the victims into the basement and again forced them onto the floor, and stole money, wallets and cell phones.
This allegation was incorporated by reference into the count charging Lewis under 18 U.S.C. § 924(c) and 18 U.S.C. § 2. But that count charged Lewis only with “knowingly us[ing] and carr[ying], and aidfing] and abett[ing] the use and carrying of, a firearm.” The Government’s decision not to charge Lewis with brandishing under 18 U.S.C. § 924(c)(1)(A)(ii), despite alleging conduct clearly consistent with brandishing in the operative count, transformed what would have been a proper sentence for brandishing into constitutional error.
The Government’s prosecution- of this case may be understandable given that this case was charged, tried, and sentenced while Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), was still good law. Until overruled by Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), Harris approved seeking an enhanced sentence for brandishing without submitting *461 that element to the jury given that only a mandatory minimum was affected. See Harris, 536 U.S. at 556, 122 S.Ct. 2406. Nevertheless, submitting an essential element affecting the applicable mandatory minimum only to the court at sentencing is impermissible after Alleyne.[3] And because the sentencing error of which Lewis complains exists only because of the Government’s decision not to charge brandishing in the indictment, we should consider the proceeding as a whole, from the indictment through sentencing, to determine whether the error was structural.
II.
The Supreme Court has taken a categorical approach in distinguishing structural errors from those errors subject to review for harmlessness. Most constitutional errors can be harmless, Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), but if an error is structural, it is “per se prejudicial” and “lead[s] to [an] automatic reversal” if properly preserved.[4] Vazquez, 271 F.3d at 103. Several factors inform whether an error is structural. Structural errors “necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.” Puckett, 556 U.S. at 141, 129 S.Ct. 1423 (quoting Neder, 527 U.S. at 9, 119 S.Ct. 1827). They also “ ‘defy analysis by harmless-error standards’ because they ‘affec[t] the framework within which the trial proceeds,’ and
are not ‘simply an error in the trial process itself.’ ” United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49, 126 S.Ct. 2557, 165 L.Ed.2d 409' (2006) (alteration in original) (internal quotation marks omitted) (quoting Fulminante, 499 U.S. at 309-10, 111 S.Ct. 1246). Thus, an error “with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as ‘structural error.’ ” Id. at 150, 126 S.Ct. 2557 (quoting Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Errors can also be structural if harmlessness is irrelevant to the right violated, as in the case of denials of the right to self-representation. Id. at 149 n. 4, 126 S.Ct. 2557 (citing McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)).
New errors are more significant to the proceedings that follow than an indictment that fails to inform a defendant of' the charges against him and the possible punishment he faces. The Fifth Amendment provides that “[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.” U.S. Const, amend. V. Accordingly, a defendant has the “substantial right to be tried only on charges presented in an indictment returned by a grand jury.” Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). This guarantee is “a basic right of criminal defendants.” United States v. Syme, 276 F.3d 131, 154 (3d Cir.2002). *462 Thus, “a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.” United States v. Vosburgh, 602 F.3d 512, 531 (3d Cir.2010); see also Dunn v. United States, 442 U.S. 100, 106, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979) (“To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends most basic notions of due process.”).
The Sixth Amendment also provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation.” U.S. Const, amend. VI. This right is violated when an indictment “does not state the essential elements of the crime.” United States v. Pirro, 212 F.3d 86, 92 (2d Cir.2000) (citing Russell v. United States, 369 U.S. 749, 761, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). “A person’s right to reasonable notice of a charge against him, and an opportunity to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence.” In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Prosecuting a defendant for an aggravated crime when the indictment charges only a lesser crime thus violates both the Fifth and Sixth Amendments. See Apprendi, 530 U.S. at 476, 120 S.Ct. 2348 (“[UJnder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.” (quoting Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999))); see also Alleyne, 133 S.Ct. at 2157 (facts that aggravate “the prescribed range of sentences to which a defendant is exposed” are “elements and must be submitted to the jury and found beyond a reasonable doubt”).
Sentencing a defendant for a crime that was not charged in the indictment renders the criminal proceedings fundamentally unfair. An indictment that charges a different crime than the one for which a defendant is sentenced does not merely affect the criminal proceeding, it fundamentally alters that proceeding. Put another way, the charging instrument is “the framework within which the trial proceeds,” Gonzalez-Lopez, 548 U.S. at 148, 126 S.Ct. 2557 (quoting Fulminante, 499 U.S. at 309-10, 111 S.Ct. 1246), and forms the basis for the Government’s proof, the accused’s defense, and the trial court’s rulings. Indeed, whether a defendant decides to plead guilty .or instead exercises his right to trial by jury may depend on the charges he faces and his potential punishment. Thus, failing to notify a defendant of the crime of which he is accused “infect[s] the entire trial process,” Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Brecht v. Abrahamson, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)), and undermines any confidence that the sentence imposed reflects a just outcome.
Further, inquiry into whether an error of this nature was harmless is inherently unreliable. See Gonzalez-Lopez, 548 U.S. at 149 n. 4, 126 S.Ct. 2557 (holding error was structural because of “the difficulty of assessing the effect of the error”). Would Lewis have pled guilty if he had known of the applicable mandatory minimum for brandishing, in hopes that his acceptance of responsibility would result in leniency at sentencing on the Hobbs Act counts? Or perhaps he would have chosen to cooperate with law enforcement against his co-conspirators to gain the Government’s support for a sentence below the mandatory minimum, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). Would he have been successful in these efforts to reduce his sentence if he had undertaken them? Assuming Lewis still chose to go to trial, how *463 would his defense have changed? Would he have sought to develop evidence rebutting a charge of brandishing? What would that evidence have been? What if Lewis’s counsel chose not to attack the Government’s proof that Lewis used or carried a firearm, but would have put on a case against weak proof of brandishing? How might the Government’s or Lewis’s counsel’s presentations of the case changed? Would witnesses have changed their testimony in response to questions probing brandishing? Would these differences have impacted the jury? All parties to a criminal proceeding, including the judge, the jury, the defendant, defense counsel, witnesses, and prosecutors, are guided by the charges in the indictment. And if that indictment charges a crime different than the one for which a defendant is sentenced, determining “what might have been” is an exercise in rank speculation.
In my view, the Supreme Court’s rationale in United, States v. Gonzalez-Lopez dictates the outcome here. There, the Supreme Court held that the violation of a defendant’s Sixth Amendment right to counsel of choice was structural error. Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. 2557. In doing so, the Supreme Court observed that a different attorney might have pursued “different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument.” Id. at 150, 126 S.Ct. 2557. Further, the choice of attorney “affeets[s] whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial.” Id. Thus, “[i]t is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings.” Id. So too when an indictment charges a lesser crime than the one for which a defendant is eventually sentenced. Assessing the effects of the flawed indictment here is “a speculative inquiry into what might have occurred in an alternate universe” and is a far cry from the “quantitative[ ] assessment] in the context of other evidence presented” that defines harmless-error analysis. Id. at 148, 150, 126 S.Ct. 2557 (quoting Fulminante, 499 U.S. at 307-08, 111 S.Ct. 1246).
In an effort to demonstrate that the error here was not harmless, the majority also distinguishes the Supreme Court precedent on which the Government relies, including United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), and Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). As the majority correctly notes, Cotton involved plain error and did not address whether the type of error here was structural. See 535 U.S. at 632-33, 122 S.Ct. 1781 (declining to resolve “whether respondents satisfy [the substantial rights] element of the plain-error inquiry”).[5] Further, apart from the majority’s analysis, Recuenco is not applicable because the Supreme Court expressly declined to consider whether an error under Blakely v. Washington, 542 U.S. 296, 124 5.Ct. 2531, 159 L.Ed.2d 403 (2004),[6] in the charging instrument was structural error. *464 See Recuenco, 548 U.S. at 220 n. 3, 126 S.Ct. 2546 (noting that defendant sought to “characterize this as a case of charging error, rather than of judicial factfinding” but rejecting that distinction “[bjecause the' Supreme Court of Washington treated the error as one of the latter type”); id. at 223, 126 S.Ct. 2546 (Stevens, J., dissenting) (“[Bjecause the Court does not address the strongest argument in respondent’s favor — namely, that Blakely errors are structural because they deprive criminal defendants of sufficient notice regarding the charges they must defend against, this decision will have a limited impact on other cases.” (citation omitted)). Indeed, after Recuenco, the Supreme Court granted cer-tiorari on the very question presented in this case, but resolved that case on alternative grounds. United States v. Resendiz-Ponce, 549 U.S. 102, 103-04, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007) (granting cer-tiorari “to answer the question whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error” but reversing “without reaching the harmless-error issue”). .Accordingly, Cotton and Recuenco hold little persuasive value as to whether the Alleyne error ■ here was structural.[7]
The majority suggests that its opinion does not foreclose a holding that the omission of an element from an indictment in violation of Alleyne is structural. Instead, the majority emphasizes that left open is whether “the alternative standards more favorable to Lewis,” including whether the error is structural, might apply in a case like this. But by limiting its harmless-error analysis to the record at Lewis’s sentencing, I believe the majority implicitly rejects a conclusion that the error here could be structural. It is difficult to conceive of a pure sentencing error as “affecting] the framework within which the trial proceeds,” rendering a trial “fundamentally unfair,” or meeting any of the other recognized criteria for structural error. Gonzalez-Lopez, 548 U.S. at 148-49 & n. 4, 126 S.Ct. 2557 (quoting Fulminante, 499 U.S. at 309-10, 111 S.Ct. 1246). Indeed, the majority undercuts its expressed restraint by acknowledging that even if the same Alleyne error is made in a future case — i.e., where neither-the indictment, jury instructions, nor conviction reflect the crime for which a defendant is sentenced — we may nevertheless affirm the sentence imposed “where the sentencing court makes it clear that it is not sentencing the defendant based on the mandatory minimum.” In my view, doing so would ratify a fundamentally unsound principle: that a defendant may be sentenced based on a crime for which he was never indicted nor convicted, and the evidence of which he was never afforded the opportunity to rebut.
Finally, the harmless-error analysis that the majority suggests is applicable here is inherently flawed. As envisioned by the majority, in order to be harmless, the record must demonstrate clearly that the sentencing court would have imposed the same sentence absent the error. United States v. Langford, 516 F.3d 205, 215 (3d Cir.2008). Put another way, errors of the kind made here would require a showing that the District Court would have imposed the' same sentence even if the de *465 fendant were charged and convicted of a lesser crime than the one for which punishment was imposed. Query whether a sentencing court’s reasoning that it would impose the same sentence regardless of the crime charged violates 18 U.S.C. § 3553(a)(l)’s mandate that the sentencing court consider “the nature and circumstances of the offense” when choosing an appropriate sentence. See United States v. Merced, 603 F.3d 203, 215 (3d Cir.2010) (for a sentence to be procedurally reasonable, the district court’s analysis must demonstrate “meaningful consideration of the relevant sentencing factors”). So although the majority indicates that harmless-error review is applicable, in practice the kind of error here would rarely, if ever, warrant our approval even under a harmless-error analysis.
III.
For these reasons, I would hold that a sentencing court’s imposition of a sentence for an aggravated crime that was not charged in a defendant’s indictment constitutes structural error. On that basis, I would vacate the District Court’s judgment and remand for resentencing based on the crime of which Lewis was actually convicted.

. The evidence at trial showed that the defendant had given 991 grams of powder cocaine and 859 grams of crack cocaine to a co-conspirator for storage. Vazquez, 271 F.3d at 97.

. Notably, neither Neder nor Johnson involved indictment omissions.

. Similarly, only after Apprendi did it become clear that the sentence in Vazquez was erroneous.

. If the error was not properly preserved, under plain-error review we may affirm a judgment even if there is a structural error that affects substantial rights. See United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (declining to resolve whether omission of drug quantity from indictment was structural but affirming conviction on plain-error review); Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (declining to resolve whether omission of element from jury instructions was structural but affirming conviction on plain-error review). However, the Supreme Court has not yet resolved whether a structural error automatically affects the defendant’s substantial rights for the purposes of that review. Puckett v. United States, 556 U.S. 129, 140, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009); see also United States v. Olano, 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

. The majority also suggests that “Cotton, like Lewis’s case, involves a pure sentencing error.” But Cotton did not opine on whether it is a pure sentencing error or instead something more when a defendant is sentenced for an aggravated crime but the indictment, jury instructions, and conviction support only a lesser offense.

. Blakely, applying Apprendi, "clarif[ied] 'that the “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.’ ” Lloyd v. United States, 407 F.3d 608, 612 (3d Cir.2005) (emphasis omitted) *464 (quoting Blakely, 542 U.S. at 303, 124 S.Ct. 2531).

. Some of our sister circuits, relying on cases like Recuenco and Cotton, have decided this issue differently. See, e.g., United States v. Harakaly, 734 F.3d 88, 94-95 (1st Cir.2013); United States v. Confredo, 528 F.3d 143, 156 (2d Cir.2008); United States v. Salazar-Lopez, 506 F.3d 748, 753-54 (9th Cir.2007); United States v. Baptiste, 309 F.3d 274, 277-78 (5th Cir.2002). For the reasons stated above and by the majority, neither Recuenco nor Cotton support a holding that the error here was not structural. Further, none of these cases cited Gonzalez-Lopez or considered its rationale.